UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Francis GAGNON,
Defendant–Appellant.

No. 79–1277.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 10, 1980.

Decided Nov. 26, 1980.

Rehearing Denied Jan. 21, 1981.

Dennis L. Blewitt of Barnard & Ferguson, Boulder, Colorado (Albert R. Matthews, Muskogee, Okl., with him on brief), for defendant–appellant.

James E. Edmondson, Asst. U. S. Atty., Muskogee, Okl. (Julian K. Fite, U. S. Atty., Muskogee, Okl., with him on brief), for plaintiff–appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Charles Francis Gagnon appeals from a judgment of conviction after a jury trial for possessing with intent to distribute marijuana, a controlled substance, in violation of 21 U.S.C. § 841. Gagnon raises nine claims on appeal, each of which is separately discussed hereafter. We conclude each of the arguments is without merit and affirm.

In reviewing findings of fact we must examine the evidence in the light most favorable to the appellee. The record showed the following. On November 19, 1978, two members of a deer hunting party set out to retrieve a deer stand they had previously left on an 1,800–acre ranch known as Old Brooks Bottom located near Calvin, Oklahoma. While there, they accidentally discovered a large newly constructed metal barn. Peering through a small crack above a locked door, the two curious hunters saw in the barn a large quantity of a green leafy substance which they suspected was marijuana. They summoned J. R. Parks, a member of the hunting party and a former volunteer special deputy for Hughes County, to view the contents of the barn. Parks looked inside and concluded that it was full of marijuana. He was able to locate a three–inch gap between the ground and the metal siding through which he secured a handful of the substance he intended to present to proper authorities. Parks telephoned Agent Means of the Oklahoma State Bureau of Narcotics and Dangerous

Drugs. Means and three other agents drove immediately to Calvin to meet with Parks and to perform a field test on the sample Parks had retrieved from the barn. The field test indicated marijuana. After receiving precise directions to the ranch, the agents obtained a search warrant authorizing them to enter the property and search the barn for marijuana.

On November 20 the agents entered the barn and discovered, among other things, seven large tarpaulins covered with drying marijuana leaves. The agents were unable to transport the large volume of marijuana in their automobiles and felt compelled to remain on the premises until a four-wheel drive pickup truck arrived from Oklahoma City the following day. On November 21, before the transport vehicle had arrived, defendant Gagnon encountered the agents when he approached the barn in a pickup truck loaded with a camper. Following a brief conversation during which one of the agents observed marijuana lying on the floor of the camper, Gagnon was arrested for possession of marijuana and his vehicle was searched.

The search revealed a cardboard carton identical to cartons found in the barn, keys fitting the lock on the gate to the property and the lock on the barn, and other items similar or identical to items found in the barn. Gagnon was then placed under arrest for possession of marijuana with intent to distribute. He was subsequently indicted and convicted by the jury of violating 21 U.S.C. § 841.

## I

We consider first Gagnon's claim that the district court erred in admitting into evidence marijuana and other items obtained pursuant to the search warrants. Gagnon argues the affidavits supporting the search warrants did not establish probable cause under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which requires that affidavits based on information provided by an informant contain sufficient detail to satisfy the magistrate that (1) the informant has in fact observed the facts recited in the affidavit and (2) the informant is reliable. *See Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). Gagnon argues Agent Means' affidavits failed to meet the second requirement of *Aguilar* that there be some showing of the informant's reliability since they did not recite that Parks was known historically to be a reliable informant.

■ We have long subscribed to the rule that an affidavit need not set forth facts of a named person's prior history as a reliable informant when the informant is a citizen/neighbor eyewitness with no apparent ulterior motive for providing false information. *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir. 1973); *see also Rutherford v. Cupp*, 508 F.2d 122, 123 (9th Cir. 1974), *cert. denied*, 421 U.S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975). We will not disturb the district court's factual determination that Parks was an unpaid nonprofessional informant with no apparent motive to fabricate.

■ Gagnon also contends the affidavits lacked sufficient facts upon which the magistrate could reasonably conclude the information provided by Parks was reliable. We disagree. The magistrate was informed that Parks, a casual hunter on Old Brooks Bottom, had personally viewed the suspicious contents of a newly constructed barn, had provided a sample of the contents to the proper state authorities, and that the sample had proved to be marijuana. We conclude the magistrate was sufficiently informed of the underlying circumstances from which the affiant concluded the informant's tip was reliable. *See United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *Edmondson v. United States*, 402 F.2d 809, 812 (10th Cir. 1968); *Schutz v. United States*, 395 F.2d 225, 229 (10th Cir. 1968).

## II

■ We turn next to Gagnon's claim that the agents, having conducted their search on November 20 and discovered the contraband specified in the warrant, had no au-

thority to remain on the premises until November 21 when Gagnon was arrested. We agree that once a search warrant has been fully executed and the fruits of the search secured, the authority under the warrant expires and further governmental intrusion must cease. *See Levin v. Blair*, 17 F.2d 151 (E.D.Pa.1927); *Mellet & Nichter Brewing Co. v. United States*, 296 F. 765, (E.D.Pa. 1923).

■ Nevertheless, we conclude that exigent circumstances in this case prevented full execution of the warrant on November 20, and justified the prolonged governmental intrusion. The agents were responsible for securing the marijuana until it could be disposed of and were justified in staying on the premises until it could be removed from the property. The government's intrusion under the circumstances was minimal. The barn was located on uninhabited land; the agents slept in their vehicles and avoided any unreasonable interference with the property. The agents' continued presence on the property was justified "under a system of justice responsive both to the needs of individual liberty and to the rights of the community." *United States v. Ventresca*, 380 U.S. at 112, 85 S.Ct. at 747.

### III

■ We also find no merit in Gagnon's claim that the evidence seized from his pickup truck was the fruit of an illegal search and therefore improperly admitted by the district court. The validity of the search in this case depends on the validity of Gagnon's arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *Beck* instructs that the validity of an arrest depends "upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officer's] knowledge . . . were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Id.*

Based on testimony at the suppression hearing that Agent Dempewolf arrested Gagnon after personally viewing marijuana in Gagnon's pickup truck, the district court concluded the arrest was valid. It is well established that at a hearing "on a motion to suppress the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions, and conclusions fairly and reasonably to be drawn from the evidence, are to be determined by the trial judge," whose determinations we must accept unless clearly erroneous. *United States v. Donahue*, 442 F.2d 1315, 1316 (10th Cir. 1971). We find no error in the district court's determination that Gagnon's arrest was supported by probable cause, or in its conclusion that the search of Gagnon's pickup truck incident to the arrest was lawful. *See Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1971); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The fruits of the search were properly admitted.

### IV

■ Gagnon contends that the informant Parks was "a de facto police agent" cloaked with state authority and, therefore, subject to the Fourth Amendment restraints on warrantless searches and seizures. That is a question of fact, our examination of which is restricted by the traditional limitations on appellate review. *See Villano v. United States*, 310 F.2d 680, 684 (10th Cir. 1962). The district court's conclusion, based on extensive testimony at the suppression hearing, that the evidence was "clear and convincing that this was a private action on behalf of Mr. Parks and his son," is amply supported by the record and is not clearly erroneous. "A bare suspicion [that Parks carried a police commission] will not justify reversing the decision of the district court, which had the benefit and advantage of hearing the live testimony and observing the demeanor of the witnesses." *Butterwood v. United States*, 365 F.2d 380, 384 (10th Cir. 1966).

### V

■ Gagnon contends that marijuana seized from the barn was improperly admitted since the government did not clearly

establish an unbroken chain of possession. His argument appears to focus on the night of November 21, during which one pickup load of marijuana was temporarily stored in an admittedly less than impregnable garage owned by the sheriff of Hughes County. Although an intrusion by pranksters or tamperers is possible, we are confined in our review to the factual realities of the record. The law governing the admissibility of physical exhibits was stated by this court in *Reed v. United States*, 377 F.2d 891, 893 (10th Cir. 1967):

> [I]f, upon consideration of the nature of the article, the circumstances surrounding the preservation and custody of it and the likelihood of intermeddlers tampering with it, the trial judge deems the article to be in substantially the same condition as when the crime was committed, he may admit it into evidence, and his determination "that the showing as to identification and nature ... is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion."

(Quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960)). *See O'Quinn v. United States*, 411 F.2d 78 (10th Cir. 1969); *Rosemund v. United States*, 386 F.2d 412 (10th Cir. 1967); *Brewer v. United States*, 353 F.2d 260 (8th Cir. 1965). Since there was no affirmative showing that the marijuana was tampered with, we cannot say the trial judge abused his discretion in admitting the marijuana in evidence. *United States v. Von Roeder*, 435 F.2d 1004 (10th Cir. 1970).

## VI

■ We also find no merit in Gagnon's claim that the district court erred in instructing the jury that 21 U.S.C. § 802(15), which defines marijuana as the plant cannabis sativa L, comprehends other forms of the plant and prohibits the possession of all varieties of marijuana. We dealt with this precise issue in *United States v. Ludwig*, 508 F.2d 140 (10th Cir. 1974), and again in *United States v. Spann*, 515 F.2d 579 (10th Cir. 1975). We there said:

The keystone of [defendant's] argument is, of course, that there are three distinct species of plants known collectively as marijuana; that Congress intended to criminalize only one species of marijuana; and that a contrary interpretation of the pertinent sections would leave the average citizen without sufficient notice of the activity sought to be prohibited. This same argument has been made in numerous cases and has been uniformly rejected .... [T]he government's expert chemist testified that the "different types" of marijuana are the same, and the defendant's expert testified that the "different types" of marijuana are distinct from each other. Having considered that testimony, the trial court instructed the jury that the statutory definition of marijuana included [other forms of cannabis] as well as Cannabis sativa L. We perceive no reason for concluding as defendant would have us do, that the instruction erroneously stated the law....

*Ludwig*, 508 F.2d at 142, quoted in *Spann*, 515 F.2d at 581-82.

## VII

■ Gagnon claims error based on the district court's admission of in-court identifications. The district court's determination that all in-court identifications of Gagnon were based on independent sources and were not tainted by prior, allegedly suggestive, photo line-ups is adequately supported by the record. *See Starkey v. Wyrick*, 555 F.2d 1352, 1354-55 (8th Cir. 1977).

## VIII

■ We also are not persuaded that the court abused its discretion in admitting the testimony of Jane Bates, the government's expert witness. *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, 516 F.2d 33 (10th Cir. 1975) (trial judge's determination that witness is qualified as expert is conclusive unless clearly erroneous); *Phelps Dodge Corp. v. Atchison, T. & S. F. Ry.*, 400 F.2d 20 (10th Cir. 1968) (acceptance or rejection of expert witness qualifications is matter for trial court's discretion).

IX

We fail to see any merit in Gagnon's remaining argument that his right to a fair trial was prejudiced by the indictment's allegation that Gagnon possessed approximately 1,300 pounds of marijuana, when the evidence produced at trial purportedly showed a lesser amount. Our review indicates there is sufficient evidence in the record to support the charge that Gagnon possessed 1,300 pounds of marijuana. Moreover, we have consistently held "that the presence and identity of the drug is the thing and the quantity of it is not important." *United States v. Estell*, 539 F.2d 697, 699 (10th Cir. 1976); *United States v. Sudduth*, 458 F.2d 1222, 1224 (10th Cir. 1972).

AFFIRMED.