**UNITED STATES of America, Plaintiff,**

v.

**Anthony ZUCCO, Defendant.**

**No. CR–81–101.**

United States District Court,
W. D. New York.

April 22, 1982.

Roger P. Williams, U. S. Atty., Buffalo, N. Y. (Kathleen M. Mehltretter, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff.

John J. Mattio, Niagara Falls, N. Y., for defendant.

CURTIN, Chief Judge.

Defendant in this criminal action is charged with the unlawful possession and transportation of several firearms under 18 U.S.C.App. § 1202(a)(1). He moves now to suppress the evidence seized from his automobile pursuant to a search warrant authorized by Acting New York State Supreme Court Justice Charles J. Hannigan on March 17, 1980. His principal contention is that the affidavits underlying the warrant failed to explain either how the affiants knew the two anonymous tipsters were credible, or how they knew the information was reliable. These omissions, defendant insists, infringed his constitutional rights under the Fourth Amendment to the United States Constitution.

The parties do not disagree about the facts leading to the issuance of the warrant. According to his affidavit, Detective Darrell Eddings of the Niagara Falls Police Department received a phone call from an anonymous man at 9:10 a. m. on March 17, 1980. The caller told him he saw a man put some pistols into the wheel well of a station wagon parked in front of 401 56th Street. A black truck and a black wooden camper were attached by tow to the station wagon. The caller added that the man also had three sub-machine guns and would be gone within an hour. Finally, the caller asserted that this person was the one responsible for recent bombings and threats in the area. Besides this information, Detective Eddings noted that Detective Cardinal told him he had just received a similar phone call.

Detective Jack Cardinal, also with the Niagara Falls Police Department, stated in his affidavit that he spoke with an anonymous caller at 9:30 a. m. on March 17. The male caller [1] told him he had seen two handguns someone was trying to sell. He further told Detective Cardinal that a man and "women" [2] were leaving town in a green station wagon with Maine license plates which was pulling a black truck.

The third and final affidavit of any significance [3] was that of P. J. Petrie of the New York State Police. According to Petrie, Detective Cardinal phoned him with the information he had just received from the anonymous caller. In response, Petrie called New York State Trooper James Farrell and Margie Vergy, a toll collector at Grand Island, and asked them to be on the lookout for the green station wagon. When Vergy saw the vehicle a short time later, she called Petrie, who relayed the information to Trooper Farrell. Farrell stopped the vehicles a short distance south of the toll booth. Within 20 minutes of Vergy's phone call, Petrie arrived at the scene. He recognized the driver of the station wagon as Anthony Zucco, a "person of questionable character with numerous arrests" dating

---

1. Defendant suggests that both callers were the same individual. That possibility does not affect my decision in this case.

2. It is unclear whether affiant meant to write "woman" instead of "women."

3. State Trooper James E. Farrell swore out a terse affidavit stating that after he received a call from Detective Petrie to watch for a green station wagon with Maine license plates, he observed it driving south on the New York State Thruway near the Town of Grand Island. Trooper Farrell also identified the passengers as Anthony J. Zucco and Linda A. Lindell, but did not explain how he knew their identities.

This information neither adds to nor detracts from the information provided in the other affidavits and has no bearing on defendant's motion.

back to 1971, including, *inter alia*, the illegal possession of a weapon and the interstate transportation of stolen goods. Zucco told Petrie that he and his girlfriend, the only two occupants in the car, were headed to Texas. When Zucco refused to consent to a search, the warrant was obtained.

Just as the parties do not dispute the facts, they do not disagree about the legal principles governing defendant's challenge to the warrant. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court established that when probable cause underlying a warrant depends on hearsay, the application must set forth both the circumstances suggesting illegal activity was underfoot and the circumstances showing the tipster was reliable. Defendant maintains the warrant fails the classic test in both respects.

He insists first that the informers saw only entirely innocent conduct. Because the licensed possession of handguns is legal in New York, he argues, mere evidence of their possession was insufficient to show a crime had occurred or was underway. Consequently, there were no circumstances to justify the informants' belief that defendant was engaged in unlawful activity.

Defendant's analysis is unconvincing. Contrary to his characterization, the behavior observed by the first phone caller was not necessarily innocuous. It was not unreasonable for the informant to infer that the suspect transferred the weapons to the wheel well of the station wagon, as opposed to the seats or cargo section of the vehicle, to prevent them from being noticed. Additionally, the second informer stated he saw two handguns "someone" was trying to sell, presumably referring to one of the car's occupants. Even assuming the personal sale of handguns is legal, as defendant suggests, it cannot seriously be debated that the circumstances surrounding the alleged attempted sale were, at the very least, out of the ordinary.

The reliability of the callers' information was supported in other respects as well. The first informant's belief that illicit activity was underway was underscored by his purported knowledge that the man he saw was responsible for other illegal activity. Furthermore, Investigator Petrie recognized the driver of the station wagon as Anthony Zucco, an individual with an extensive arrest history. The affiant's knowledge of the subject's reputation can properly be considered in assessing the reliability of an informant's tip in certain circumstances. *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081–2082, 29 L.Ed.2d 723 (1971) (*but see* footnote 6, *infra*).

Finally, the informants' descriptions of their observations were both specific and accurate. They reported in some detail the color and type of vehicles, the people in the car, the Maine license plates, and the time and place they saw the defendant. Defendant correctly points out that the accuracy of a description of innocent details cannot in itself provide the requisite probable cause for a warrant. On the other hand, such accuracy can serve to corroborate the informants' assertions that they witnessed legally questionable conduct, thereby substantiating the reliability of their information. *United States v. Gonzalez*, 555 F.2d 308, 313 (2d Cir. 1977); *United States v. Lace*, 502 F.Supp. 1021, 1043 (D.Vt.1980).

For all these reasons, I am satisfied Judge Hannigan reasonably could have determined that the affiants' information was sufficiently reliable to meet the first prong of the *Aguilar-Spinelli* formula.

Defendant stands on firmer ground when he challenges the affidavits for their failure to recite any underlying indicia of the informants' credibility. Neither Detective Eddings nor Detective Cardinal explained why he believed the unnamed man on the other end of the telephone line was telling the truth. Both affidavits are utterly devoid of any express references to the callers' trustworthiness. On their faces, then, the Cardinal and Eddings affidavits patently violate the *Aguilar-Spinelli* rule that affidavits

based on hearsay must include indicators of the sources' reliability.

In defense of the warrant, the government contends that the affidavits contain an implicit factor of the tipsters' reliability which adequately fulfills the goals of *Aguilar* and *Spinelli*, thereby offsetting their ostensible constitutional defects. Specifically, the government maintains that each caller's status as an eyewitness to criminal activity carries with it an intrinsic element of credibility. Unlike the unnamed paid informants treated with caution by the *Aguilar-Spinelli* Court, eyewitnesses to a crime seldom pass along idle rumor or stand to gain financially from their information. For these reasons, the general rule that the underlying bases of an informant's reliability must be specified in the affidavit does not invariably apply to eyewitness informants, and, according to the government, should not apply here. *United States v. Burke*, 517 F.2d 377, 380 and n.2 (2d Cir. 1975); *see also United States v. Rollins*, 522 F.2d 160, 164–65 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976).

The difficulty with the government's analysis is that neither the *Burke* exception nor its underlying policy considerations aptly apply to the fact situation presented here. In *Burke*, the affidavit revealed that the police had both interviewed and obtained a written statement from the informant, whose identity was disclosed. The informant stated he had not only seen the sawed-off shotgun in the suspect's room but had also been told by the suspect that the gun was stolen. Moreover, the informant's information was strongly corroborated by the independently obtained fact that the suspect did not possess a properly registered firearm.

In this context, the United States Court of Appeals for the Second Circuit observed:

> [T]he language in *Aguilar* and *Spinelli* [requiring a recitation of the affiant's basis for crediting the informer] was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime.

*United States v. Burke*, 517 F.2d at 380. The court went on to hold that where the named informant saw the shotgun and explained why he believed it was stolen, the magistrate had sufficient reason to believe the informant was reliable despite the affiant's failure to attest to his source's credibility.

■ Significantly, however, an informant's status as an eyewitness, victim, or other nonprofessional does not *per se* impart an automatic badge of reliability. Rather, the court must look to the nature of the informant's relationship to the suspect in light of all the circumstances to determine whether the absence of a motive to lie can be inferred. *United States v. Stephenson*, 490 F.Supp. 625, 633 (E.D.Mich.1979). *See United States v. Swihart*, 554 F.2d 264, 269 (6th Cir. 1977). Put another way, lacking an express statement of the nonprofessional informant's credibility, the underlying affidavits must provide a reasonable alternate basis to infer the informer's trustworthiness from either the informer's status or the way the information was obtained.[4]

---

4. Informers have been found to be inherently reliable where they were: an unidentified witness to the theft of a public telephone, *McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); an unidentified innocent bystander witness to conduct occurring simultaneously with criminal activity, *United States v. Melvin*, 596 F.2d 492, 497 (1st Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *United States v. Kuntz*, 504 F.Supp. 706, 710 (S.D.N.Y.1980); a victim of a crime, *United States v. Swihart*, 554 F.2d 264, 269 (6th Cir. 1977); *see United States v. Burke*, 517 F.2d at 380; a named accomplice to a crime, *United States v. Dunloy*, 584 F.2d 6, 9–10 (2d Cir. 1978); "known private citizens giving good faith observation," *United States v. McCrea*, 583 F.2d 1083, 1085 (9th Cir. 1978); a named relative of the suspect who reports the suspect's admission, *United States v. Sultan*, 463 F.2d 1066, 1069 (2d Cir. 1972); an anonymous government agent, *United States v. Morill*, 490 F.Supp. 477, 478 (S.D.N.Y.1980); and an identified fellow employee, *United States v. Nilsen*, 482 F.Supp. 1335, 1349–50 (D.N.J.1980).

In the case at bar, none of the affidavits predicating the search warrant provides any hint, tacit or otherwise, of the anonymous phone callers' reliability which can stand in lieu of an express attestation to meet the *Aguilar-Spinelli* test. The anonymous male callers were identified only as that. It is impossible to tell if the callers were simply disinterested early morning passers-by who happened to come upon suspicious activity they thought the police would be interested in. It is impossible to tell if the callers had any prior connections to the police department in either a volunteer or paid capacity. It is impossible to tell whether the callers were accomplices or relatives of the suspect, or had any other personal relationship to the suspect which might justify an inference of credibility.

■ Moreover, the scope of the anonymous phone callers' actual observations is particularly scanty. Here, one caller purportedly saw the suspect put handguns in his car, while the other caller allegedly witnessed an attempted gun sale. Ironically, it is not even possible to know from Detective Cardinal's affidavit who was actually seen trying to peddle the guns, much less whether the seller was one of the people in the station wagon. An eyewitness account of possibly questionable, but arguably innocent, behavior might sustain an ascription of reliability where the suspect told the named informer that the guns were stolen, as in *United States v. Burke*, 517 F.2d at 381, where the identified informant saw the suspect running from the office where shots had just been fired towards the apartment in which he knew the suspect lived, as in *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976), or where the unidentified informer's tip that a white Cadillac left the scene shortly before the explosion was "non-accusatory and did not describe criminal activity" and therefore was "not at all in the nature of an informant's tip," as in *United States v. Melvin*, 596 F.2d 492, 497 (1st Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). Unlike those cases, however, in this case there is little in the nature of the callers' statuses or the way they obtained their information which might otherwise lend them some credibility despite their anonymity.[5]

On the contrary, if there are any inferences to be gleaned from the affidavits, they serve to undermine rather than support a finding of inherent trustworthiness. Besides describing defendant's station wagon and truck, the 9:30 a. m. caller told Detective Cardinal that the suspects were leaving town. Nothing in the detective's affidavit reveals how the caller knew this information, which clearly cannot be considered an eyewitness observation. In fact, such information is more like a

> "meager report" that "could easily have been obtained from an offhand remark heard at a neighborhood bar", as to which prior history of providing accurate information is required. *Spinelli v. United States*, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

*United States v. Burke*, 517 F.2d at 381.

■ Similarly, Detective Eddings' affidavit is rife with uncredited, unsupported double hearsay. The anonymous caller told Detective Eddings that the suspect was responsible for past bombings and that another person told him the suspect possessed three sub-machine guns. This unobserved manifest hearsay is remarkably similar to information provided to the police by professional informants; it is not the stuff an innocent citizen bystander would easily come by. As such, the policy considerations behind the *Aguilar-Spinelli* showing of credibility requirement *vis-a-vis* anonymous, paid informants appear to apply with equal force in this case:

> 576, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723 (1971); *United States v. Darensbourg*, 520 F.2d 985, 989, *modified on other grounds*, 524 F.2d 233 (5th Cir. 1975).

---

5. The underlying affidavits must be analyzed with particular scrutiny when the hearsay information is from an anonymous source. *United States v. Stephenson*, 490 F.Supp. at 633; *See also United States v. Harris*, 403 U.S. 573,

The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability, a "neutral and detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the legal conduct at hand, and this circumstance could also [adversely] affect their credibility.

*United States v. Burke*, 517 F.2d at 380 n.2 (*citing with approval United States v. Bell*, 457 F.2d 1231, 1238–39 (5th Cir. 1972)). Accordingly, in light of all the circumstances, the fact that the unidentified callers claimed they observed perhaps suspicious conduct is inadequate, without more, to infer the requisite degree of inherent reliability.

In a final attempt to salvage the warrant, the government insists that the "something more" is embodied in the corroborative information supplied by New York State Troopers Farrell and Petrie. Trooper Farrell stopped the defendant on the New York State Thruway a short distance south of the North Grand Island Bridge toll booth after Investigator Petrie radioed him. He verified the callers' description of the vehicles in question, but little else. The only information added by Investigator Petrie was his recognition of the driver as Anthony Zucco, a man with a lengthy arrest record. The government contends these corroborative details, though innocent,[6] provide enough of a basis to find the callers reliable.

I disagree. In some situations, the independent corroboration of innocent details can substantiate an informer's credibility.

*See United States v. Jackson*, 544 F.2d 407, 410–11 (9th Cir. 1976); *United States v. Stephenson*, 490 F.Supp. at 637; *see also United States v. Baker*, 577 F.2d 1147, 1150–51 n.10 (4th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); *United States v. Jackson*, 560 F.2d 112, 121 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977) (independent corroboration of innocent facts can predicate a finding of probable cause for the warrant). However, the scope of the corroboration needed to do so is not a constant factor. As the extent to which the informer's inherent reliability can be imputed decreases, the nature and detail of the corroborating facts become correspondingly more important.

When balanced against the exceedingly weak indicia of the anonymous callers' intrinsic reliability, the scope of the independently corroborated innocent facts in this action fail to satisfy constitutional prescriptions. This is not a case where the police, using the informer's information only as a starting point, conducted their own investigation and flushed out additional information which was different from, yet corroborative of, the initial tip. *See United States v. Melvin*, 596 F.2d at 496–97; *United States v. Jackson*, 560 F.2d at 114–15; *see also* cases cited at footnote 4. For instance, in the case cited by the government, the anonymous caller told the FBI agent where the stolen toys could be found. *United States v. Pinero*, 329 F.Supp. 992, 994–95 (S.D.N.Y.1971). However, the agent's affidavit further affirmed that the FBI had received an earlier report that the truck transporting the toys had been stolen and that after receiving the anonymous tip, FBI agents surveilled the premises and noticed cartons labeled as toy boxes. Notably, the *Pinero* court observed:

---

**6.** The government relies on *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), to support its conclusion that the affiants' knowledge of the subject's reputation can be considered in determining probable cause. The vitality of *Harris*, a plurality opinion, has been questioned by more than one

court. *See United States v. Stephenson*, 490 F.Supp. at 632–33 n.36. In contrast, the *Spinelli* Court vigorously discounted the value of such knowledge with respect to a probable cause finding. 393 U.S. at 418–19, 89 S.Ct. at 590–591.

[I]f the search warrant in the present case depended solely upon the anonymous telephone call received by the FBI on May 1, 1964, it would be as vulnerable as was the warrant in *Aguilar.*

329 F.Supp. at 995.

■ The *Eddings, Cardinal, Petrie,* and *Farrell* affidavits are virtually devoid of any independently obtained corroborative facts separate and distinct from the information supplied by the anonymous callers. Other than Zucco's arrest history, the only specific corroborating information furnished by the affiants was the description of the defendant's vehicles, the identical innocuous detail provided by the callers. Even if Investigator Petrie's knowledge of Zucco's background might buttress the callers' reliability in another context, *see* footnote 6, here, where the callers' credibility apparently hinges on this single corroborating fact, Zucco's reputation is far from adequate to give "additional weight to allegations that would otherwise be insufficient." *Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590.

I am fully aware that affidavits underlying a search warrant must be examined in a "commonsense and realistic fashion," *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), and that "[a] magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of the warrant," *United States v. Jackstadt,* 617 F.2d 12, 13 (2d Cir.), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *United States v. Kuntz,* 504 F.Supp. 706, 711 (S.D. N.Y.1980). When examined in light of all the circumstances, however, the affidavits provide no basis on which the Judge could have assessed the underlying reliability of the anonymous phone callers. Accordingly, the second critical prong of the *Aguilar-Spinelli* test was not met in this case. Defendant's motion to suppress the evidence obtained pursuant to the constitutionally invalid warrant is granted.

So ordered.