UNITED STATES of America, Appellant,

v.

Anthony ZUCCO, Defendant-Appellee.

No. 187, Docket 82–1143.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1982.

Decided Nov. 24, 1982.

Kathleen M. Mehltretter, Asst. U.S. Atty., W.D.N.Y., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for appellant U.S.A.

John J. Mattio, Niagara Falls, N.Y., for appellee Zucco.

Before MESKILL, PIERCE and FAIRCHILD,* Circuit Judges.

MESKILL, Circuit Judge:

On March 17, 1980 an Acting Justice of the New York Supreme Court (state judge) issued a warrant to search a vehicle which had been stopped by the New York State Police as it travelled south on the New York State Thruway. Armed with the warrant, the police recovered from the automobile four handguns, two rifles, and one shotgun. The driver, appellee Anthony Zucco, was subsequently charged with seven counts of unlawful possession and transportation of firearms in violation of 18 U.S.C. App. § 1202(a)(1) (1976). In the United States District Court for the Western District of New York, Zucco moved to suppress the evidence seized from the automobile on the grounds that the affidavits supporting the warrant were constitutionally insufficient to support a finding of probable cause. The district court in its opinion reported at 537 F.Supp. 901 (W.D.N.Y.1982), John T. Curtin, Chief Judge, granted Zucco's motion and held that the affidavits provided no basis for the state judge to assess the reliability of the anonymous tipsters whose information led to Zucco's apprehension. The government appealed pursuant to 18 U.S.C. § 3731 (1976). We reverse.

The state judge reviewed several affidavits supporting the application for a search warrant. The affidavit of Detective Darrell Eddings of the Niagara Falls Police Department reported that at about 9:10 a.m., March 17, 1980, he received a telephone call from an unidentified informant who claimed that he had seen a man place several pistols into the wheel well of a station wagon parked at 401 56th Street. The informant said that the station wagon was towing a black truck and black wooden camper, and that he suspected the man would be gone within the hour. The informant claimed knowledge that the man was responsible for bombings and threats in the area and that he possessed three sub-machine guns.

Detective Jack Cardinal of the Niagara Falls Police Department reported in his affidavit that he received a telephone call at about 9:30 a.m. on March 17 from an unidentified man [1] who said that he had seen someone trying to sell two handguns. The informant added that a man and a woman were leaving town in a green station wagon sporting Maine license plates with a black truck in tow.

---

* Honorable Thomas E. Fairchild, United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. It is unknown whether the anonymous phone calls received by Detective Eddings and Detective Cardinal were placed by the same person or by different people. The district court stated that the answer to this question would not have affected its decision. 537 F.Supp. at 902 n.1.

The state judge also considered an affidavit from Senior Investigator P.J. Petrie of the New York State Police. On the morning of March 17, Investigator Petrie received a telephone call from Detective Cardinal who related his conversation with the anonymous informant. Detective Cardinal suspected that the green station wagon might be headed for the New York State Thruway. Investigator Petrie alerted Trooper James Farrell, also of the New York State Police, and a collector at a nearby Thruway toll to be on the lookout for a green station wagon. About ten minutes later, the toll collector spotted the vehicle and notified Investigator Petrie, who in turn notified Trooper Farrell. The vehicle was stopped by Trooper Farrell a short distance beyond the toll booth. The station wagon was occupied by a man and a woman.

When he arrived at the scene, Investigator Petrie recognized the driver of the station wagon as Zucco, a " 'person of questionable character with numerous arrests,' " 537 F.Supp. at 902, quoting Affidavit of P.J. Petrie, Gov't App. at 14, including arrests for possession of a weapon, rape, criminal mischief, theft, conspiracy to commit theft, possession of stolen property, interstate transportation of a stolen vehicle, and possession of a controlled substance. When asked, Zucco told Investigator Petrie that he and his female companion were on their way to Texas. Zucco did not consent to a search of the station wagon. Consequently, a search warrant was obtained from the state judge and the firearms were recovered from the automobile.[2]

The aforementioned facts are not disputed and the parties agree for the most part on the applicable law. The district court concluded that under the controlling authority of the Supreme Court's decisions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), Zucco's Fourth Amendment rights were violated because the underlying affidavits offered insufficient information from which the state judge could determine that the anonymous informants were credible or reliable. Consequently, the court granted the motion to suppress the evidence.

## I

■ A search warrant is properly issued upon a determination of probable cause by a neutral and detached magistrate, *see Steagald v. United States,* 451 U.S. 204, 212–13, 101 S.Ct. 1642, 1647–1648, 68 L.Ed.2d 38 (1981), from information set forth in sworn affidavits which set forth the "grounds for issuing the warrant." Fed.R.Crim.P. 41(c)(1). Hearsay information contained in an affidavit can suffice to establish probable cause, *Jones v. United States,* 362 U.S. 257, 269–70, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960), provided there is a " 'substantial basis' for crediting the hearsay," *United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971) (plurality opinion). While a reviewing court should "not serve merely as a rubber stamp for the police," it is firmly established that substantial deference should be accorded judicial determinations of probable cause. *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). "[I]n a close case any doubts should be resolved in favor of upholding the warrant." *United States v. Jackstadt,* 617 F.2d 12, 14 (2d Cir.) (per curiam), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). It is against this backdrop of substantial deference to judicial findings of probable cause that we must view the district court's holding.

Recognizing that an informant's tip presents special problems of reliability and trustworthiness, the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), announced that in order to find probable cause from affidavits that rely upon informants' tips, the

---

**2.** A fourth affidavit was presented to the state judge from Trooper Farrell but the district court questioned the significance of this affidavit because the information in it was only cumulative of the information in the other affidavits.

affidavits must set forth: (1) the underlying basis for the informant's belief that a crime had been committed, and (2) the underlying basis for the affiant's belief that the informant is reliable and his tip credible. *Id.* at 114, 84 S.Ct. at 1513. Upon these factual predicates, a detached and neutral magistrate can ensure that probable cause exists. *United States v. Marino,* 682 F.2d 449, 452 (3d Cir.1982). The first prong of the *Aguilar* test is satisfied if the affidavit states that the informant personally observed the activity described. *See, e.g., United States v. Gagnon,* 635 F.2d 766, 768 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Agapito,* 620 F.2d 324, 332 (2d Cir.1979), cert. denied, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980); *United States v. Rollins,* 522 F.2d 160, 164–65 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). The second prong of the test is satisfied if the informant has a track record of providing reliable information. *See, e.g., United States v. Marino,* 682 F.2d at 453; *United States v. Sumpter,* 669 F.2d 1215, 1220 (8th Cir.1982); *United States v. Rollins,* 522 F.2d at 164–65.

The two-prong *Aguilar* test was refined in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), where the Supreme Court provided an alternative route to satisfy either prong of the test. A sufficiently-detailed tip makes it easier for the magistrate to "know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Id.* at 416, 89 S.Ct. at 589; *see United States v. Marino,* 682 F.2d at 453. Corroboration of the details supplied by the informant serves to buttress the reliability of the informant by confirming the accuracy of the tip. *Spinelli,* 393 U.S. at 416–17, 89 S.Ct. at 589; *see United States v. Jackson,* 560 F.2d 112, 121 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *United States v. Canieso,* 470 F.2d 1224, 1229–30 (2d Cir. 1972). There is substantial disagreement as to whether the corroboration necessary to satisfy *Aguilar-Spinelli* must be of incriminating facts or may be of innocent facts. Some courts, including this Court, have accepted corroboration of innocent facts as sufficient to establish an informant's credibility. *See, e.g., United States v. Jackson,* 560 F.2d at 121; *United States v. Gonzalez,* 555 F.2d 308, 313 (2d Cir.1977); *United States v. Sultan,* 463 F.2d 1066, 1069 (2d Cir.1972). Other courts require the corroboration to be of incriminatory facts. *See, e.g., United States v. Rasor,* 599 F.2d 1330, 1332 (5th Cir.1979); *United States v. Larkin,* 510 F.2d 13, 15 (9th Cir.1974). In between are those courts permitting only substantial or significant corroboration of innocent facts. *See United States v. Smith,* 598 F.2d 936, 940 (5th Cir.1979). The elusive contours of *Aguilar-Spinelli* are tested here by affidavits which reveal detailed tips from anonymous informants whose relationship to the suspect is unknown, but whose tips were substantially corroborated as to innocent facts, and were buttressed by Petrie's independent corroboration of the suspect's past criminal activity.[3]

## II

The government argues that anonymous eyewitness reports are *inherently* credible and, therefore, not subject to the rigors of the *Aguilar-Spinelli* test. Several courts have attributed the *Aguilar-Spinelli* test to concern with the "particular problem of professional informers" who may well have

---

**3.** The affidavits in this case provided a stronger foundation for probable cause than the affidavits considered in *Illinois v. Gates,* 85 Ill.2d 376, 53 Ill.Dec. 218, 423 N.E.2d 887 (1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982). In *Gates,* the Illinois Supreme Court affirmed the suppression of evidence seized pursuant to a search warrant where the supporting affidavits revealed detailed information supplied by an anonymous informant which had been corroborated by the police. Unlike *Gates,* the police in this case not only corroborated innocent facts supplied by the anonymous informants, but they also possessed independent knowledge of Zucco's prior criminal record. This additional factor sets this case apart and convinces us that there is no need to wait for the Court's decision in *Gates.*

strong incentives to lie. *United States v. Burke,* 517 F.2d 377, 380 (2d Cir.1975); *see United States v. Baker,* 577 F.2d 1147, 1149–50 (4th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); *Henighan v. United States,* 433 A.2d 1059, 1064 (D.C.App.1981). That same concern applies where it is not clear from the affidavits who the informants are, what their motives are, or how credible they are. This Court has held that *Aguilar-Spinelli* should not apply in "wooden fashion" where the information recorded in the affidavits was from a victim of the crime. *United States v. Burke,* 517 F.2d at 380. *See United States v. Jackson,* 560 F.2d 112, 121 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977). A known citizen acting in good faith while reporting a crime plainly has no motive to falsify information. *See United States v. Gagnon,* 635 F.2d 766, 768 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). However, the district court correctly observed that an informant's status as an eyewitness does not alone "impart an automatic badge of reliability." 537 F.Supp. at 904.

■ The affidavits presented to the state judge were devoid of any information from which it could be inferred that the informants were without motive to lie. The anonymous informants were identified only as anonymous informants. In these circumstances, the district court properly turned, as this Court has so often in the past, to *Aguilar-Spinelli.* Although there are decisions in which certain types of informants were deemed inherently reliable,[4] the affidavits in those cases described the relationship of the informant to the suspect. We cannot know from the affidavits in this case whether the informants were without a motive to lie. Accordingly, the decision of the district court must stand or fall on its application of the *Aguilar-Spinelli* test.

### III

The affidavits of both Eddings and Cardinal recited that the informants had personally witnessed the conduct they described, conduct the district court properly characterized as "out of the ordinary." 537 F.Supp. at 903. This recital alone could be sufficient to satisfy the first prong of *Aguilar-Spinelli, see United States v. Agapito,* 620 F.2d 324, 338 (2d Cir.), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980), but the district court found more. The information supplied by the informants and related in the affidavits was detailed and specific as to place and time, the color and type of vehicle, the vehicle's license plates, and the activity witnessed. The specificity of the tips lends additional support to the reliability of the information provided. *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). The accuracy of the tips was substantially corroborated by Investigator Petrie and Trooper Farrell. *See United States v. Gonzalez,* 555 F.2d 308, 313 (2d Cir.1977). The events witnessed by the informants and corroborated by the police were not fabricated or matters of common knowledge. The information was specific, not conclusory, and certainly not born of rumor or speculation. The green station wagon, occupied by a man and a woman, was pulled over on the Thruway soon after one informant stated his belief that the man was about to leave town. The affidavits permitted the state judge to infer that the informants had indeed witnessed the questionable conduct they reported. *See United States v. Rollins,* 522 F.2d 160, 164 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States v. Viggiano,* 433 F.2d 716, 719 (2d Cir.1970), *cert. denied,* 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971). The district court correctly concluded that the first prong of *Aguilar-Spinelli* was met.

---

**4.** *See, e.g.,* the cases cited by the district court, 537 F.Supp. at 904 n. 4, and this Court's decision in *United States v. Burke,* 517 F.2d 377, 380–81 (2d Cir.1975). *But see United States v. Button,* 653 F.2d 319, 326 (8th Cir.1981); *United States v. Ward,* 546 F.Supp. 300, 306 (W.D. Ark.1982).

The defect specified by the district court was that Eddings' and Cardinal's affidavits failed "to recite any underlying indicia of the informants' credibility." 537 F.Supp. at 903. Consequently, the district court reasoned that there was no basis for the state judge to assess the credibility of the informants or to determine that the affidavits recited probative information as opposed to " 'idle rumor or irresponsible conjecture.' " 537 F.Supp. at 906, quoting *United States v. Burke*, 517 F.2d 377, 380 n. 2 (2d Cir.1975). To be sure, neither affiant stated the grounds for his belief that the anonymous tipster was credible nor did either affidavit set forth an alternative basis from which the informant's credibility could be evaluated. But what was not apparent from each affidavit standing alone came into sharp focus when the affidavits were analyzed collectively.

The affidavits presented to the state judge, when examined in a "commonsense and realistic fashion," *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), provided a sufficient basis for the state judge to evaluate and accept the credibility of the informants. The failure of Eddings or Cardinal to assert the underlying basis for their belief that the informants were credible was not a fatal defect because the affidavits of Investigator Petrie and Trooper Farrell supplied the corroboration necessary to satisfy the second prong of *Aguilar-Spinelli*. Specifically:

1. soon after one informant said the station wagon and truck were leaving town, the vehicle was spotted on the Thruway;

2. the station wagon was driven by a male accompanied by a female;

3. the station wagon was green and sported Maine license plates;

4. the station wagon had a black truck in tow; and

5. when questioned, the driver said he was leaving the state.

*See* Gov't App. at 10. Standing alone, extensive corroboration of innocent detail can suffice to establish the informant's credibility. *United States v. Goff*, 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Jackson*, 544 F.2d 407, 410–11 (9th Cir.1976). But here there was more. When Investigator Petrie arrived at the scene, he recognized Zucco. He was familiar with his arrest record, which included an arrest for illegal possession of firearms. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971) (plurality opinion).

■ It is true that the corroboration necessary to substantiate the credibility of an informant "is not a constant factor." 537 F.Supp. at 906. "As the extent to which the informer's inherent reliability can be imputed decreases, the nature and detail of the corroborating facts become correspondingly more important." *Id. See United States v. Canieso*, 470 F.2d 1224, 1229–30 (2d Cir.1972). Here Petrie's independent knowledge of Zucco's background was highly significant and weighs heavily in our decision. *See United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir.1982). It evidenced a consistency between the informants' information and Petrie's suspicions. Almost every fact supplied by the informants was corroborated by the police. Under these circumstances, the police had every reason to believe the informants. The affidavits before the state judge, when seen together, presented a clear, consistent, and compelling foundation for probable cause. No more is required. *See United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971) (plurality opinion).

We can appreciate the district court's concern over the "underlying reliability of . . . anonymous phone callers." 537 F.Supp. at 907. The police here were presented with a believable tip that suspicious activity was underfoot and that the suspects were about to leave the state. The informants were non-paid eyewitnesses to the activity described and their accounts were substantially corroborated by the police. More extensive corroboration may well have eliminated any risk that the informants were lying, but "such risks are

inherent in any system allowing, as it must, that search warrants may be issued on something less than a full trial of the existence of probable cause." *United States v. Burke,* 517 F.2d 377, 381 (2d Cir.1975). Mindful of the substantial deference accorded judicial determinations of probable cause, we must conclude that there existed a substantial basis in the affidavits here from which the state judge could find probable cause. *United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971) (plurality opinion).

Accordingly, we reverse, vacate the suppression order and remand to the district court for further proceedings not inconsistent with this opinion.