**UNITED STATES of America, Plaintiff,**

v.

**Patrick George BASSETT, Defendant.**

**No. 93–20039–1.**

United States District Court,
D. Kansas.

Nov. 18, 1993.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, KS, for plaintiff.

Michael L. Harris, Asst. Federal Public Defender, Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendant's *Motion to Suppress Statement* (Doc. # 30) filed September 15, 1993.

### I. Background

On March 11, 1993, Alaing Guillott, an inmate at the United States Penitentiary in Leavenworth, wrote to the United States Probation Office ("Probation Office") in Detroit, Michigan, informing them that Patrick George Bassett had threatened to kill former President Ronald Reagan. The Probation Office reported the letter to the United States Secret Service ("Secret Service").

Special Agent Thomas E. Meyer of the Secret Service interviewed Guillott on March 19, 1993, at Leavenworth. During the interview, Guillott stated that he was in a cell with Bassett and Bassett's then cellmate, John Powers, on or around February 13, 1993. According to Guillott, Bassett told them that, upon his release in April, he intended to travel to Atlanta, buy a rifle, and then travel to where former President Reagan was living and assassinate him. Guillott explained that Bassett blamed Reagan and the United States Sentencing Guidelines for prison overcrowding. Guillott gave to the Secret Service notes that he claimed to have made of the conversation. Special Agent Meyer in-

terviewed Mr. Powers on March 25, 1993, at which time Powers stated that he had been present during the conversation and that he heard the defendant threaten to kill former President Reagan. Powers recounted essentially the same plot described by Guillott.

In his follow-up investigation, Special Agent Meyer confirmed that Bassett was incarcerated for threatening President Bush in violation of 18 U.S.C. § 871. Special Agent Meyer viewed a videotape showing Bassett threatening President Bush and engaging in self-destructive and self-mutilating behavior. Finally, Special Agent Meyer administered a polygraph test to Guillott, which he passed.

Bassett was released from Leavenworth on May 4, 1993, taken to the Kansas City International Airport, and given a plane ticket to Detroit, his state of post-release supervision. Bassett, however, did not fly to Detroit. Rather, he met with an individual going by the name of Steve DeMario, an undercover Secret Service Agent.[1] DeMario and Bassett drove to a motel room in Kansas City, Kansas.

Bassett believed that he was en route to a drug transaction. In truth, however, the Secret Service had set up the drug transaction in order to elicit incriminating statements regarding the alleged threat of former President Reagan. The Secret Service had equipped both the automobile and the motel room with surveillance devices, which made audio and video recordings of Bassett's conduct. Special Agent Meyer testified that he was monitoring the conversation in the car and the motel.

After an uneventful drive, Bassett and DeMario entered the motel room. Several minutes later, DeMario left the motel room and returned with a knapsack of firearms. DeMario opened the knapsack and attempted to interest Bassett in the guns, hoping to elicit some remark about Reagan. Bassett, however, advised DeMario that he "wanted nothing to do with guns" and that he thought he was to be picking up a kilogram of cocaine to

---

1. Apparently, Bassett had arranged this meeting by making calls to an undercover line run by the Secret Service in Kansas City.

**1472**

take to California, for which he would be paid $5,000. DeMario again attempted to interest Bassett in the guns, at one point directly asking him whether he wanted to take firearms to California and do something to someone in Santa Ana, California. Bassett again demonstrated no interest in the firearms, remaining intent on carrying out the drug transaction. At this point, DeMario removed the firearms from the room and law enforcement officers entered the room and arrested Bassett for threatening former President Reagan. Bassett made incriminating statements after he was arrested.

On May 6, 1993, Patrick George Bassett· was indicted on one count of threatening to kill former President Ronald Reagan in violation of 18 U.S.C. § 879(a)(1). Bassett moved to suppress any statements made subsequent to his arrest, contending that they were (1) the fruit of an unlawful arrest, and (2) involuntary. The Court conducted a hearing on October 18, 1993, and now addresses Bassett's arguments in turn.

## II. *Probable Cause*

■■■ It is undisputed that the statements at issue occurred after Bassett was placed under arrest. To be valid, Bassett's warrantless arrest must have been supported by probable cause. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "Probable cause exists where the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Maher,* 919 F.2d 1482, 1485 (10th Cir.1990). In determining probable cause, the Court examines the totality of the circumstances as they would have appeared to a prudent, cautious, trained police officer. *See United States v. Morgan,* 936 F.2d 1561, 1569 (10th Cir.1991) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)), *cert. denied,* — U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). The Court concludes that the totality of the circumstances

at the time of the arrest support the government's reasonable belief that Bassett had threatened former president Reagan.

■■■ Two individuals—Guillott and Powers—claimed to have witnessed the alleged threats. Witness statements ordinarily go far towards establishing probable cause: the witness clearly has a basis for his knowledge, and the police have no reason to doubt the truthfulness of the witness. *See* 1 Wayne R. LaFave, *Search & Seizure* § 3.4 (1987); *see also Morgan,* 936 F.2d at 1569 (discussing citizen witness); *United States v. Gagnon,* 635 F.2d 766, 768 (10th Cir.1980) (same), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).[2] The Court recognizes the Guillott and Powers, being federal prisoners, are not typical "citizen witnesses," and therefore might not enjoy the same presumption of truthfulness. Their corroborating stories and Guillott's successful polygraph, however, make the allegations sufficiently credible for purposes of establishing probable cause.

In response, Bassett suggests that Guillott and Powers simply made up the allegations, arguing that his lack of interest in guns on May 4, 1993, shows that Guillott and Powers were lying. The Court disagrees. First, although Guillott and Powers were cellmates and presumably did have an opportunity to fabricate their stories, Bassett can point to no evidence in support of that allegation. In this context, the Court is not inclined to disregard corroborating witness testimony, even from convicted felons, based solely on the specter of conspiracy. Second, the Court acknowledges Bassett's arguments concerning the government's failed "sting" but disagrees with the emphasis Bassett places on that fact. While it is true that these events are necessarily relevant under a "totality of the circumstances" analysis, the Court simply fails to grasp the probative force suggested by Bassett. The relevant question is whether Bassett threatened Reagan on February 13, 1993, not whether he held a grudge on May 4, 1993. Moreover, from the testimony adduced at the hearing, Bassett's con-

**2.** Although "basis of knowledge" and "veracity" no longer govern the probable cause analysis, they are still concepts that "usefully illuminate the common sense, practical question" of what constitutes probable cause. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328.

duct in the motel room demonstrated as much an unrelenting determination and focus in closing a drug transaction as a lack of hostility towards Reagan.[3] Under these circumstances, Special Agent Meyer reasonably believed that Bassett had in fact threatened former president Reagan and therefore had probable cause to arrest him.

### III. Voluntariness of Statements

Bassett next contends that, even if his arrest was lawful, anything he said subsequent to his arrest was the product of coercion and therefore inadmissible. "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt." *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). It is the government's burden to prove that the statements were voluntary. *United States v. Muniz*, 1 F.3d 1018, 1021 (10th Cir.1993). In determining voluntariness, the Court considers the totality of the circumstances, *see Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302, 315 (1991), including "the intelligence and education of the individual being questioned, whether he was advised of his constitutional rights, the length of detention, the prolonged nature of the questioning, and whether the individual was physically punished." *Short*, 947 F.2d at 1449. The Court finds that Bassett's statements were voluntary.[4]

Special Agent Meyer testified that he had control of Bassett from the time he was arrested and handcuffed and that, although there were other people in the area, only he and Special Agent Buchholz were present during Bassett's questioning. Although the record is not clear, the government appears to contend that, when asked about the February incident with Guillott and Powers, Bassett responded that "it was just jailhouse talk."

Bassett, however, recalled a different series of events. Bassett testified that, after Special Agent Meyer brought up Guillott and Powers, he denied the allegations, stating only that Reagan's name had come up in a conversation with Powers. According to Bassett, a large, older, white-haired ATF agent told him that they would bring weapons charges against him and make him take a polygraph if he did not make a statement about threatening Reagan. Bassett testified that he then told Special Agent Meyer that he heard Guillott threaten Reagan because Reagan instituted a detainer on Colombians. On cross-examination, however, Bassett testified that he did admit to making a threat in response to the ATF agent's alleged coercion.[5]

The Court disbelieves Bassett's testimony. Bassett's version of the interview was internally inconsistent—first denying then admitting that he admitted to threatening Reagan—and his testimony concerning the large, white-haired ATF agent was less than credible. The Court thus concludes that Bassett was not threatened prior to making whatever statements he made and that the totality of the circumstances clearly indicate that Bassett's statements were voluntarily made. Therefore, Bassett's motion to suppress those statements as involuntary is also denied. **IT IS THEREFORE ORDERED**

---

**3.** Given Bassett's prior conviction for threatening President Bush, the Court assumes that Bassett does not intend to argue that his conduct on May 4, 1993, proves that Guillott and Powers were lying because threatening a president was outside of his demonstrated character.

**4.** Although the parties dispute the nature of the statements at issue, "Fifth Amendment cases consistently refer to incriminating 'statements,' and are not limited to 'confessions' per se." *Griffin v. Strong*, 983 F.2d 1540, 1543 (10th Cir.1993).

**5.** The following colloquy occurred at the close of cross-examination:

Q. It didn't matter what the ATF agent told you because it didn't work, did it?
A. What didn't work?
Q. If he threatened you, it didn't make you confess, did it?
A. Sure, he threatened me.
Q. But it didn't make you confess because you didn't. You're telling us that you did not admit an earlier threat?
A. I admitted a threat to him when he was interviewing me.

that defendant's *Motion to Suppress Statement* be and hereby is **OVERRULED.**

See publication Words and Phrases for other judicial constructions and definitions.