[No. F011355. Fifth Dist. Mar. 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD WAYNE JAMES et al., Defendants and Appellants.

COUNSEL

Mike A. Karagozian and Thomas V. Miles for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Raymond L. Brosterhous II and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, Acting P. J.**—An information filed November 3, 1987, charged appellants Richard Wayne James and Laurie Charlton with possession of marijuana for sale (Health & Saf. Code, § 11359) and possession of dangerous fireworks (Health & Saf. Code, § 12677). Appellants pleaded not guilty.

Appellants brought motions to suppress evidence under Penal Code section 1538.5. The trial court, after a hearing, denied the motions upon all bases claimed by appellants.

On September 14, 1988, both appellants pleaded guilty; appellant James pleaded guilty to violation of Health and Safety Code section 11359; appellant Charlton pleaded guilty to violation of Health and Safety Code section 11357, subdivision (c), possession of more than 28.5 grams of marijuana. Appellant James was sentenced to 180 days in jail and 180 days of house

arrest; he was fined $2,500, in addition to a $500 restitution fine. Appellant Charlton was sentenced to 10 days in jail and 110 days of house arrest; she was fined a total of $300.

Appellants filed timely notices of appeal and both were allowed their liberty pursuant to appeal bonds.

## FACTS

On February 17, 1987, a search warrant issued commanding the authorities to search a residence located at 805 Lake Street in Chowchilla. The affidavit supporting the request for the search warrant revealed that the children of appellant James, who resided at the house, stayed at the residence while on parental visits. The children reported seeing drugs both used and sold on the premises. The warrant issued pursuant to this affidavit authorized a search of the house, toolshed and other areas directly related to the residence and any vehicles located on the premises; the warrant authorized seizure of marijuana, cocaine, and paraphernalia associated with the use and/or packaging of the drugs and articles of personal property tending to establish the identities of those having dominion and control of the premises, including keys.

The authorities first served the warrant on February 18, 1987, at approximately 11 a.m.; they remained on the property until almost 3:30 p.m. Appellant Charlton, also a resident, was at home at the time the warrant was executed. Initially, anywhere from four to seven officers participated in the execution of the search warrant. Marijuana was found inside the residence. Appellant Charlton was arrested and transported to jail at approximately 12:15 p.m. At that time she was given an inventory of items seized. (See Pen. Code, § 1535.)

Appellant Charlton had told the officers that appellant James was expected back from Madera at approximately 1 p.m. When Ms. Charlton was escorted to jail, two officers, Hancock and Wisener, remained waiting for James and also, according to their testimony, to continue the search. At the suppression hearing, appellant Charlton claimed she locked both the front and back doors at the time she left and that no one remained inside; Officer Wisener recalled the front door became locked at some point during the period he was there but the back door remained unlocked. He claimed to have been in and out of the house several times during the search.

The two officers recalled eating lunch, brought to them by another officer, at the residence for about fifteen minutes after the others had left. They answered the telephone when James called and spoke with him. At approxi-

mately 2:30 in the afternoon, Officer Wisener used keys found prior to appellant Charlton's arrest to open the trunk of a Trans Am found on the premises. The keys were not mentioned on the inventory given appellant Charlton. An unlocked suitcase was found inside the trunk of the car. It contained bulk marijuana. A second inventory was prepared, showing seizure of the keys, vehicle and the contraband. It was mailed to appellant Charlton.

*Whether the Trial Court Improperly Denied Appellants' Motion Under Penal Code Section 1538.5 to Suppress the Evidence Seized.*

Appellants contest the trial court's denial of their motions to suppress in two aspects. First appellants claim the deputies here searched the house and premises twice pursuant to a single warrant; such second search is impermissible and the fruits of such search should be suppressed. Second, if we find only a single search occurred, they claim the search itself was then excessively long and unreasonable under the Fourth Amendment of the United States Constitution, also giving rise to a right to suppress the evidence.

No case in California has heretofore needed to address the application of the basic principle of "one warrant, one search." Factually, the issue arises where the authorities, pursuant to a search warrant, conduct a search of the described premises. For some reason they leave, then return at a later time; under the authority of the original warrant they seek to enter the property and search again. When faced with the issue of the legality of the second search most jurisdictions have unfailingly adopted the rule that "a warrant is executed when a search is conducted, and its legal validity expires upon execution. After execution, no additional search can be undertaken on the same warrant." (*State* v. *Trujillo* (1981) 95 N.M. 535 [624 P.2d 44, 48]; *United States* v. *Gagnon* (10th Cir. 1980) 635 F.2d 766, 769; *State* v. *Pina* (1963) 94 Ariz. 243 [383 P.2d 167, 168], overruled on another point in *Yuma County Attorney* v. *McGuire* (1975) 111 Ariz. 437 [532 P.2d 157]; *McDonald* v. *State* (1953) 195 Tenn. 282 [259 S.W.2d 524, 525]; *Duncan* v. *State* (1914) 11 Okla. Crim. 217 [144 P. 629, 632].)

For example, in *McDonald* v. *State,* the authorities secured a search warrant to search for intoxicating liquors on the premises. They searched the premises and found nothing. They left and returned an hour later, ostensibily under the authority of the same warrant. This time they found illicit whiskey. In invalidating the seizure occurring during the second search the Supreme Court of Tennessee articulated the rationale for the rule, recognizing the great potential for abuse absent such limitation.

"In this State a search warrant may be executed and returned at any time within five days after its date. Code, section 11907. If for no other reason than that the officer still has it in his possession, a search warrant once served, but not returned, can be used a second time within that five days for the purpose of a second search of the premises described, then, logically, it would seem to follow that such officer, with his squad of assistants, may use it to make an indefinite number of such searches during that five days. Thus, this warrant could become a means of tyrannical oppression in the hands of an unscrupulous officer to the disturbance or destruction of the peaceful enjoyment of the home or workshop of him or her against whom the efforts of such officer are directed. On principle, therefore, such second search under the warrant seems to come within the prohibition of the unreasonable search and seizure clause of our Constitution, Article 1, Section 7." (*McDonald* v. *State, supra*, 259 S.W.2d at pp. 524-525.)

Those cases cited by the People which condone return of the authorities to the place searched and resumption of the search do not reject the general limiting rule; they merely found it inapplicable under the facts in the case. (See *State* v. *Trujillo, supra*, 624 P.2d at p. 48; *Com.* v. *Baldwin* (1981) 11 Mass.App. Ct. 386 [416 N.E.2d 544, 549]; *United States* v. *Bowling* (6th Cir. 1965) 351 F.2d 236, 241; *People* v. *Saiken* (1971) 49 Ill.2d 504 [275 N.E.2d 381, 387].) In *Trujillo*, the court found the existence of exigent circumstances justifying either a continuation of the first search or a second search. In *Baldwin*, independent authority existed to conduct an administrative inspection. In *Bowling*, the authorities initially "searched" the defendant's home by writing down the serial numbers on numerous business machines found; once they checked the numbers and found the equipment was stolen they returned and seized the material. In *Saiken*, the court found the activities on the second day were a continuation of the earlier search, noting the special statutory authority to search for a dead human body.

We acknowledge the validity of the general rule that a single search warrant authorizes but a single search. So holding does not, however, end our discussion. In deciding that a single warrant allows only one search, we must recognize it is sometimes unclear whether the activities of the authorities constituted a single search or multiple searches. Such determination of whether the "search" was singular or duplicative is a question of fact which is best consigned to the trial court hearing the motion to suppress. (See *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; and see also *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) After having decided the nature of the authorities' activities, the trial court would rule upon the reasonableness of such activities. On review, we would be bound by the express or implied factual findings of the trial court supported by substantial evidence; we would redetermine, as

a question of law, the reasonableness of such activities. (*People* v. *Lawler, supra*, 9 Cal.3d at p. 160.)

Here, appellants argued below that the authorities engaged in two searches, one while Ms. Charlton was on the premises and ending when she was escorted to jail—the scope of the search is reflected in the first inventory given Ms. Charlton. The second search occurred after she left and produced the large quantities of marijuana found in the car. The People's witnesses claimed they continued the search after Ms. Charlton left; other than a lunch break, one or both of the officers was consistently engaged in searching or researching the interior of the house as well as the appurtenant buildings and vehicles. The trial court adopted the People's version of events and found that the activities of the authorities constituted a single, continuous search. We are bound by such factual findings which here are supported by substantial evidence. (*People* v. *Lawler, supra*, 9 Cal.3d at p. 160.)

■ Nothing in Penal Code section 1535 governing the issuance of an inventory requires or even intimates that the making of an inventory represents the end or termination of a search; the statute does not preclude the issuance of several inventories pursuant to a single search. Based upon the above findings, the search was not unreasonable under the "one warrant, one search" rule.

Alternatively, appellants claim if we find that a single, continuous search occurred, it was unreasonable as it was unduly long. They claim that the approximately four and one-half hours spent searching the nine hundred- to eleven hundred-square-foot house and surrounding premises and vehicles was excessive and constitutionally offensive. (See *United States* v. *Gagnon, supra*, 635 F.2d at p. 769; *People* v. *Saiken, supra*, 275 N.E.2d at p. 387.)

■ While recognizing the validity of the legal principle asserted by appellants—a search, reasonable at its inception, can become constitutionally infirm if unduly prolonged—the facts once again deny appellants any relief. "The reasonableness of the duration [of a search] must be determined by the circumstances of each case." (*State* v. *Williams* (1975) 169 Conn. 322 [363 A.2d 72, 77].)

Here, the deputies testified they hoped to intercept appellant James upon his expected return to the house that day at one in the afternoon. His return was imminent. Except for a 15-minute lunch break, 1 or both continued searching while waiting for Mr. James. Although several officers initially aided in the search, they did overlook searching the car. It was stipulated below that the authorities discovered the keys to the car prior to Ms.

Charlton's removal. The warrant allowed the authorities to seize keys and to search all vehicles on the premises. While much of the search conducted by the two officers who remained at the house was probably redundant, it was not unreasonable to "double check" the thoroughness of the earlier work. Here, the early efforts failed to discover the contraband in the trunk; the later efforts succeeded. Given the propriety of remaining on the premises for a while to intercept an occupant, we do not find it unreasonable that the officers continued their search efforts. The duration of the search under these circumstances was reasonable.

The judgment is affirmed.

Dibiaso, J., and Vartabedian, J., concurred.