THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BARBARA LOGSDON, Defendant-Appellee.

Fifth District   No. 5—88—0811

Opinion filed February 25, 1991.

990

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

The State appeals from the order of the circuit court of Fayette County granting the motion of defendant, Barbara Logsdon, to suppress evidence illegally seized. The question presented is whether a police officer who enters a house with the consent of the owner, sees marijuana and then leaves the house to call for backup and a search

warrant, may reenter the house without a warrant to seize the marijuana. We reverse.

On April 3, 1988, defendant, while hospitalized, called the Effingham County sheriff's department and explained that her ex-husband had made harassing telephone calls to her in the hospital and that her home had been burglarized in the past. She requested that the sheriff's department watch her residence for strange cars or people. The sheriff's deputy called the St. Elmo police department to have them check the house.

Officer Mattingly of the St. Elmo police department went to the home around 11 p.m. that evening. He found the front door locked, but found the screen door torn, and pry or "jimmy" marks on the kitchen door. The wood next to the door lock was chipped. The officer tried the door and found it unlocked. He opened the door and entered the house with his weapon drawn and a flashlight, checking for anyone who might be hiding. In each room, he looked under and behind objects where a person might hide.

In one bedroom, Officer Mattingly found a door with no handle, which appeared to lead upstairs. The door had an old lock which appeared to take a skeleton key. It was not locked. With a pen, Officer Mattingly flipped the latch and opened the door. Inside this door was another door into a cubbyhole just large enough for someone to pass through. This door was open six or eight inches. He shined his light into the cubbyhole and saw a clear plastic bag which appeared to contain marijuana.

Officer Mattingly was familiar with marijuana, having conducted more than 100 field tests on marijuana in his 15 years of law enforcement. He picked up the bag, looked at it and concluded that it was marijuana. The officer did not move anything in the cubbyhole to see the marijuana. He reached under a garbage bag in the cubbyhole and felt another bag similar to the first. He left both bags and continued his check for intruders in the house. Upon completing his search, he went to his squad car to call for another officer to secure the house while he went to obtain a search warrant.

Backup arrived at approximately 11:50 p.m. Officer Mattingly then called the State's Attorney, who instructed him to reenter the house and seize the marijuana without a search warrant. Mattingly and his backup reentered the house and searched it again in case he had missed someone on his first entry. This second search was more thorough than the first. This time, the officers seized the bags and found them to contain 18 separate, individually wrapped bags of marijuana.

On April 13, 1988, Officer Mattingly and Mary Meyers, a city employee, visited defendant in the hospital. After waiving her *Miranda* rights (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), defendant confirmed that she called the sheriff's department and asked to have her home checked. She stated that if the police were to find anything unusual, she expected them to enter the house to see if anyone was there.

The circuit court found Officer Mattingly acted properly from the time he received the initial telephone call from the sheriff's department until he left the house to obtain a search warrant. The court concluded, however, that when Mattingly reentered the house without a warrant, he exceeded the scope of defendant's consent. The circuit court therefore suppressed the evidence.

The underlying issue in this appeal is whether the second search exceeded the scope of defendant's consent. Specifically, the State argues the search was, in fact, one continuous search to which defendant consented. Defendant responds the second search was a separate, independent search beyond the scope of her consent. Under the circumstances presented here, we believe the State is correct.

■ ■ The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) prohibit unreasonable searches and seizures as well as the issuance of warrants without probable cause. A search conducted pursuant to consent, however, is one of the established exceptions to the requirements of both a warrant and probable cause before a police search. (*People v. Bruce* (1989), 185 Ill. App. 3d 356, 368, 541 N.E.2d 708, 715.) While generally a consent to search is given with the understanding that the search will be conducted forthwith and that only a single search will be made, under appropriate circumstances, second or subsequent searches are acceptable. (See *People v. Wilson* (1985), 133 Ill. App. 3d 265, 271-72, 478 N.E.2d 561, 566; *People v. Lee* (1981), 93 Ill. App. 3d 894, 896-97, 417 N.E.2d 1090, 1092.) We believe, however, that here, just as in *People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 542 N.E.2d 1148, we are not faced with two searches, but rather with one continuous search. A brief interruption or a temporary suspension of a search does not transform one continuous search into two separate searches. *Manikowski*, 186 Ill. App. 3d 1007, 542 N.E.2d 1148; see also *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942.

■ The record reveals Officer Mattingly never abandoned his investigation, relinquished control over the defendant's house, or indicated an intent not to seize the marijuana. He only briefly interrupted

his search to call for backup and to reach the assistant State's Attorney. The call for backup clearly demonstrated an intent to keep control of the house and maintain a police presence there, and the call to the assistant State's Attorney surely revealed his intent to take possession of the contraband. Only one search occurred, albeit temporarily suspended. Officer Mattingly therefore did not exceed the scope of defendant's consent upon reentering the premises. In addition, because Officer Mattingly was legally justified in being in defendant's residence, he lawfully could seize the marijuana in plain view, even if on his second pass through the house. (See *People v. Torres* (1986), 144 Ill. App. 3d 187, 190, 494 N.E.2d 752, 754; see also *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535.) The trial court therefore erred in suppressing the evidence in this instance.

Even if we were to agree with defendant and find that two separate searches occurred here, we still would reach the same conclusion. The evidence should not have been suppressed because the searches took place within the scope of defendant's consent. Defendant consented to allow her house to be searched while she was hospitalized. Implicit in this consent was the right of the police officer to search the house as many times as needed and any place where an intruder might hide. Officer Mattingly searched the house while defendant was in the hospital at a time when there was evidence of a forcible entry and searched an area where uncontrovertedly a person could have crawled inside to hide. Mattingly therefore searched the house within the time limits and physical boundaries set by defendant's consent. A consent to search which is unlimited as to time and number of searches must be judged under a rule of reason. (*Manikowski*, 186 Ill. App. 3d at 1011-12, 542 N.E.2d at 1151; *People v. Shelton* (1982), 110 Ill. App. 3d 625, 629, 442 N.E.2d 928, 932.) Under the facts presented here, we find Officer Mattingly's searches to be within that rule of reason. (See *Wilson*, 133 Ill. App. 3d at 271-72, 478 N.E.2d at 566; *Lee*, 93 Ill. App. 3d at 896-97, 417 N.E.2d at 1092-93.) Mattingly's first entry into the house was consensual and proper. He found the marijuana on his first search through the house. While he could have seized the contraband at that point, Officer Mattingly was in the process of searching a dark house late at night for intruders. Instead of immediately seizing the contraband, he wisely continued his search of the house. Once Mattingly saw the marijuana, however, defendant lost any protected privacy interest in it. Once no privacy interest remains, greater latitude is given to authorities in the methods by which they seize contraband. (*People v. Hebel* (1988), 174

Ill. App. 3d 1, 25, 527 N.E.2d 1367, 1382; *People v. Uran* (1987), 157 Ill. App. 3d 294, 299, 510 N.E.2d 610, 613.) Accordingly, Mattingly could leave the house temporarily, call for a backup and search warrant, and reenter without violating any of defendant's privacy interests. Under either reasoning, the trial court erred in suppressing the marijuana found in defendant's home.

For the aforementioned reasons, we reverse the judgment of the circuit court of Fayette County and remand for further proceedings.

Reversed and remanded.

HARRISON and GOLDENHERSH, JJ., concur.