[No. B229392. Second Dist., Div. Seven. Dec. 8, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO VALENCIA, Defendant and Appellant.

924

---

**Counsel**

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ZELON, J.—

## INTRODUCTION

After being pulled over for a traffic violation, appellant Alejandro Valencia gave a Los Angeles police officer consent to search his pickup truck. The officer conducted a brief search and found nothing incriminating. During the search, a second officer discovered that Valencia might have outstanding arrest warrants. The officers transported Valencia and his vehicle to a local police station, where a third officer reinspected the truck and found a bindle containing approximately three grams of cocaine. Valencia was arrested and charged with possession of cocaine for the purpose of sale.

Valencia filed a motion to suppress arguing that the second search of his vehicle exceeded the scope of his consent. The trial court denied the motion and Valencia pled no contest to the lesser included offense of possession of cocaine. (Health & Saf. Code, § 11350, subd (a).)

On appeal, Valencia contends that the second search of his vehicle did not fall within the scope of his consent, and, as a result, the trial court should have granted his motion to suppress. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Summary of Events Preceding Valencia's Arrest*

On April 15, 2010, Los Angeles Police Officer Ruben Banuelos and his partner, Officer Scott Costa, were driving down 45th Street in a marked police vehicle. At approximately 5:15 p.m., Officer Banuelos noticed that a blue pickup truck had a "broken tail light" and conducted a traffic stop.

Officer Banuelos ordered the driver, appellant Alejandro Valencia, to exit the vehicle and informed him that he "was stopped because of a broken tail light." Officer Banuelos asked Valencia if he could search the truck and Valencia "gave [his] consent to do so." Officer Banuelos performed a "cursory search" of the "front compartment and cargo area of the vehicle," but "found nothing."

While Officer Banuelos was searching the vehicle, Officer Costa conducted a warrant check on Valencia and determined that he might have outstanding arrest warrants. Officer Banuelos transported Valencia to the police station to investigate the matter further. Rather than leaving Valencia's truck on the side

of the road, Officer Costa elected to drive the vehicle to the station, where the officers "planned to release [it] to [Valencia] if the possible warrants that came back on the computer were not his."

When Officer Banuelos and Valencia arrived at the station, Officer Banuelos told Officer Michael Hofmeyer that Valencia had consented to a search of his vehicle. Although Hofmeyer was aware that Officer Banuelos had already searched Valencia's truck, he decided to conduct a second search at the police station. An officer assisting Officer Hofmeyer with the search found a bindle in the cab of the truck that contained approximately three grams of cocaine.

### B. *Trial Court Proceedings*

On June 15, 2010, the Los Angeles County District Attorney filed an information charging Valencia with a single count of possession of cocaine for the purpose of sale. (Health & Saf. Code, § 11351.) During the trial court proceedings, Valencia filed a motion to suppress the cocaine recovered during the second search of his vehicle. Valencia argued that Officer Hofmeyer had failed to obtain consent prior to conducting the search and had no other lawful grounds to search the vehicle.

Officer Banuelos and Officer Hofmeyer were the only witnesses who testified at the hearing on the motion to suppress. Officer Banuelos stated that, during the traffic stop, he asked Valencia "Can I search your truck?" and Valencia "gave [his] consent to do so." Officer Banuelos then conducted a brief search but "found nothing." Officer Banuelos further testified that, after conducting the search, he transported Valencia to the station based on information Officer Costa had provided "regarding the status of the warrants [in relationship] to the defendant."

Officer Hofmeyer testified that he had been "in the area" when Officer Banuelos and Officer Costa stopped Valencia's truck and was aware that Officer Banuelos had searched the vehicle at the time of the initial stop. Defense counsel asked Officer Hofmeyer whether Officer Banuelos informed him that Valencia provided consent to search the truck "before or after the truck was taken to [the police s]tation." Officer Hofmeyer explained that Officer Banuelos told him Valencia had given "consent [during the stop at] 45th" street both "prior to the [initial] search," and again "at [the police s]tation." Officer Hofmeyer further explained that he performed the second search of the vehicle shortly after Valencia's initial stop "due to the fact we had consent."

The district attorney argued that, based on the officers' testimony, Officer Hofmeyer's search fell within the scope of Valencia's consent: "I don't

believe that just because Officer Banuelos said 'Can I search your car?' . . . consent was just of that one person and nobody else . . . to search the car. [Officer Banuelos] did a cursory search at the location. [The officers] had reason to take the car to the station. There was no withdrawal of any consent. Consent was not limited. At the station, there was the opportunity to do a more extensive search, and it was done. The drugs were found. . . . Consent was valid and, therefore the search was valid."

Defense counsel, however, argued that Officer Hofmeyer was not permitted to conduct a second search of the vehicle because Valencia's "consent ended when Officer Banuelos finished his search": "No reasonable person would be able to give consent to every police officer. Officer Banuelos did not . . . even participate in the second search. The limited scope of this search was, 'Can I search your car?' No reasonable person would expect his car would be taken off the street, driven to a police station and searched by . . . other officers. [¶] . . . It is a limited consent. Once the consent was done, there was no justification to search his car again at [the police station]. . . . [T]hat consent did not go along with him to [the police station]."

The trial court denied the motion, ruling that Officer Hofmeyer had not exceeded the scope of Valencia's consent because "[t]here was no suggestion that there be any limitation on the search."

After the trial court denied the motion, Valencia pled guilty to a single count of possession of cocaine in violation of Health and Safety Code section 11350, subdivision (a). At sentencing, the trial court found that Valencia was "eligible for sentencing pursuant to Prop. 36, Penal Code section 1210.1." The court suspended imposition of a sentence and ordered that Valencia be "be placed on Proposition . . . 36 for a period of 18 months."

Valencia filed a timely appeal of the trial court's order denying the motion to suppress.

## DISCUSSION

On appeal, Valencia argues that Officer Hofmeyer's search of the vehicle exceeded the scope of his consent. More specifically, Valencia argues that his consent did not "extend to a second search conducted after police drove his truck to a police station."

A. *Standard of Review and Summary of Fourth Amendment Legal Principles*

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings,

express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

■ "A search without a warrant is presumed to be illegal. [Citation.] Once a defendant shows the search was warrantless, the burden shifts to the People to justify the search by establishing the search fell within an exception to the warrant requirement. [Citation.] One exception to the Fourth Amendment's warrant requirement is the defendant's voluntary consent to the search." (*People v. Bishop* (1996) 44 Cal.App.4th 220, 237 [51 Cal.Rptr.2d 629].) However, " '[a] consensual search may not legally exceed the scope of the consent supporting it.' [Citation.]" (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965 [57 Cal.Rptr.3d 478] (*Cantor*).)

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251 [114 L.Ed.2d 297, 111 S.Ct. 1801] (*Jimeno*).) " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances. [Citation.]' " (*Cantor, supra,* 149 Cal.App.4th at p. 965.)

## B. *The Trial Court Did Not Err in Ruling That Hofmeyer's Search Fell Within the Scope of Valencia's Consent*

To determine whether Officer Hofmeyer's search exceeded the scope of Valencia's consent, we must decide two issues. First, we must determine whether, as a matter of law, it is ever reasonable to conduct more than one search pursuant to a single grant of consent. Second, to the extent the Fourth Amendment permits such conduct, we must decide whether Officer Hofmeyer's search was objectively reasonable under the circumstances presented in this case.

### 1. *A single grant of consent does not, as a matter of law, prohibit more than one search*

The parties have not identified any California case that has held that, as a matter of law, law enforcement may conduct more than one search based on a single grant of consent. Although this appears to be an issue of first impression in this state, Valencia and the district attorney nonetheless agree that an officer may conduct more than one search if, under the totality of the circumstances, a reasonable person would conclude that any subsequent search fell within the boundaries of the defendant's consent.

Two prior California decisions—*Pinizzotto v. Superior Court* (1968) 257 Cal.App.2d 582 [65 Cal.Rptr. 74] (*Pinizzotto*) and *People v. Gorg* (1955) 45 Cal.2d 776 [291 P.2d 469] (*Gorg*)—briefly discuss the propriety of conducting multiple searches pursuant to a single grant of consent. However, both cases were decided on other grounds and therefore do not constitute binding precedent. (See *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006 [124 Cal.Rptr.3d 785] ["observations by an appellate court are dicta and not precedent, unless a statement of law was 'necessary to the decision, and therefore binding precedent[].' [Citation.]"]; *People v. Lucatero* (2008) 166 Cal.App.4th 1110, 1116 [83 Cal.Rptr.3d 364].) Although not binding, we may nevertheless consider the reasoning of those decisions to determine whether they have any persuasive effect under the facts presented here. (*In re Marriage of Dunmore* (1996) 45 Cal.App.4th 1372, 1381 [53 Cal.Rptr.2d 450] ["Dicta may have persuasive effect in a subsequent decision, but it is not precedent."]; *Masry v. Masry* (2008) 166 Cal.App.4th 738, 741 [82 Cal.Rptr.3d 915] ["Dicta may not decide a case but can be persuasive and influence later cases."].)

In *Pinizzotto, supra*, 257 Cal.App.2d 582, the defendant gave Officer Jackson O'Neal consent to search his car. Officer O'Neal conducted the search and found "nothing 'of a suspicious nature.' " (*Id.* at p. 586.) Shortly thereafter, two other officers—Sergeant Denton and Officer Wyatt—arrived at the scene and located a package of marijuana near the automobile. Although Denton and Wyatt were not aware of the defendant's prior consent, they searched the vehicle a second time and found marijuana in the glove compartment. The defendant filed a motion to suppress arguing that the consent he provided to Officer O'Neal was not "sufficient to justify a finding that [he] consented to the second search of the automobile." (*Id.* at p. 590.)

The appellate court began its analysis by stating that "[a] consent to one search does not authorize a subsequent second search." (*Pinizzotto, supra*, 257 Cal.App.2d at p. 590.) Considered in isolation, this language suggests that the appellate court concluded that officers may never conduct more than one search pursuant to a single grant of consent. However, the court further explained that the second search was improper because Officer O'Neal never informed Denton and Wyatt that the defendant had consented to a search: "[T]he record shows that when Officer O'Neal asked [defendant] during his detention if he could 'look' in the car, the petitioner's answer was sufficient to imply that he consented to the officer looking through the car at that time. Officer O'Neal never communicated to the other officers that petitioner had allowed him to look through the car or that, in fact, he had looked through the car. While the knowledge of one officer may in general be imputed to others with whom he works, in light of the evidence here it cannot be said that the two officers who made the subsequent search were acting upon the consent of the petitioner." (*Ibid.*) The court's analysis makes clear that its

ruling did not turn on the fact that two searches were conducted pursuant to a single grant of consent; rather, it turned on the fact that the officers who conducted the second search were not acting on that consent. In this case, however, the officer who conducted the second search was specifically informed that Valencia had consented to a search of his vehicle. Therefore, the reasoning in *Pinizzotto* has no application under the facts presented here.

In *Gorg, supra*, 45 Cal.2d 776, which was decided 10 years before *Pinizzotto*, the California Supreme Court was presented with a case in which officers conducted multiple searches of a bedroom after obtaining the defendant's consent. The defendant in *Gorg* was "arrested on a charge of shoplifting." (*Id.* at p. 779.) The interrogating officer, Inspector Kieler, testified that "he requested and received defendant's permission to search his room," which was located in a residence owned by Don Stevens. (*Ibid.*) Inspector Kieler went to Stevens's house to conduct the search, but found no evidence related to the shoplifting charge. After Inspector Kieler had completed his search, police discovered that the defendant had previously been arrested on narcotics charges. Two days after the initial search, officers returned to Stevens's residence and obtained his consent to search the entire house. The officers then conducted a second search of the defendant's room and found marijuana.

The defendant filed a motion to suppress arguing that "he did not consent to the search of his room." (*Gorg, supra*, 45 Cal.2d at p. 782.) The only evidence of consent was from Inspector Kieler, who testified that he had obtained the defendant's consent immediately after the shoplifting arrest. The Supreme Court concluded that, regardless of whether the defendant had given his consent, the search was proper based on the fact that police obtained the consent of Stevens, who owned the residence and exerted joint control over the defendant's room.

The court did, however, express doubt as to whether the second search of the defendant's room fell within the scope of the defendant's consent: "[U]nder the facts and circumstances related therein, it is doubtful . . . whether such consent . . . included consent to repeated searches or was limited to the first search for other stolen articles. Thus, if that issue were crucial it is doubtful whether the People sustained their burden of proving that defendant . . . consented to the searches of his room." (*Gorg, supra*, 45 Cal.2d at pp. 782–783, fn. omitted.) Although this portion of the opinion was immaterial to the ruling and therefore dicta, the Supreme Court's analysis constitutes persuasive authority that a single grant of consent may support "repeated searches" depending on the "facts and circumstances" of each case. (See *County of Fresno v. Superior Court* (1978) 82 Cal.App.3d 191, 194 [146 Cal.Rptr. 880] ["Dicta may be highly persuasive, particularly where made by

the Supreme Court after that court has considered the issue and deliberately made pronouncements thereon . . . ."]; *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272 [82 Cal.Rptr.3d 629] [appellate courts "generally consider California Supreme Court dicta to be persuasive"].)

Several other jurisdictions have concluded that a second search may be appropriate depending on the specific circumstances of the case. For example, in *People v. Logsdon* (1991) 208 Ill.App.3d 989 [153 Ill.Dec. 788, 567 N.E.2d 746, 748–749] (*Logsdon*), an Illinois appellate court held that: "While generally a consent to search is given with the understanding that the search will be conducted forthwith and that only a single search will be made, under appropriate circumstances, second or subsequent searches are acceptable. . . . [¶] . . . [¶] . . . A consent to search which is unlimited as to time and number of searches must be judged under a rule of reason." (*Ibid.*) Similarly, in *Commonwealth v. Reid* (2002) 571 Pa. 1 [811 A.2d 530] (*Reid*), the Pennsylvania Supreme Court ruled that, when deciding whether a defendant's consent authorized more than one search, courts must conduct "an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent." (*Id.*, 811 A.2d at p. 549 [upholding subsequent search based on prior grant of consent].)

Numerous other jurisdictions have applied a test of objective reasonableness to determine whether an officer's repeated search of a single location fell within the scope of the defendant's consent.[1] By contrast, we are aware of no jurisdiction that has adopted a bright-line rule prohibiting officers from conducting more than one search based on a single grant of consent.

Based on the authorities above, we conclude that, at least in some circumstances, a defendant's consent to a search may justify law enforcement

---

[1] (See *State v. Grega* (1998) 168 Vt. 363 [721 A.2d 445, 452–453] (*Grega*) [concluding that, "[under] circumstances of this case," police "did not exceed the scope of defendant's consent" by conducting searches on "two subsequent days"]; *People v. Trujillo* (1977) 40 Colo.App. 186 [576 P.2d 179, 181] (*Trujillo*) ["the question of the temporal scope of a consent to search is also a question of fact to be determined in light of all of the circumstances . . ."]; *State v. Douglas* (1985) 123 Wis.2d 13 [365 N.W.2d 580, 581, 583–584] (*Douglas*) ["We hold that under the circumstances of this case, the state did need a warrant to reenter the defendant's home . . . ."]; *Ferguson v. Caldwell* (1975) 233 Ga. 887 [213 S.E.2d 855, 858–859] (*Ferguson*) [rejecting argument that single consent permits only one search and upholding second search "under the[] circumstances"]; *Sanchez v. State of Texas* (Tex.App. 1998) 982 S.W.2d 929, 931 (*Sanchez*) [explaining that specific facts of case distinguished "other cases where courts have found that an initial voluntary consent to search extended or carried over to a subsequent search"]; *State v. Baublitz, Jr.* (2005) 172 N.C. App. 801 [616 S.E.2d 615, 620] [" 'The length of time a consent lasts depends upon the reasonableness of the lapse of time between the consent and the search in relation to the scope and breadth of the consent given.' "]; 79 C.J.S. (2006) Searches, § 167, p. 210 ["Consent which is not expressly limited as to the number of searches must also be judged under a rule of reason."].)

in conducting more than one search. In determining whether a particular grant of consent permitted officers to conduct more than one search, courts must evaluate whether, under the totality of the circumstances, it was objectively reasonable for law enforcement to conclude that the subsequent search fell within the scope of the initial consent. (*Jimeno, supra,* 500 U.S. at p. 251.)[2]

### 2. *Officer Hofmeyer's search fell within the scope of Valencia's consent*

Having determined that law enforcement officials are not categorically prohibited from conducting more than one search based on a single grant of consent, we must next decide whether Officer Hofmeyer's decision to conduct a second search of Valencia's truck was objectively reasonable under the specific facts presented in this case.

### a. *Summary of relevant case law from other jurisdictions*

Before making this evaluation, we examine the circumstances under which other jurisdictions have permitted multiple searches arising from a single grant of consent. (*Rappaport v. Gelfand* (2011) 197 Cal.App.4th 1213, 1227 [129 Cal.Rptr.3d 670] [where "no California cases [have decided the issue presented], we may look to other jurisdictions for guidance"]; *Summit Industrial Equipment, Inc. v. Koll/Wells Bay Area* (1986) 186 Cal.App.3d 309, 317 [230 Cal.Rptr. 565] ["The specific question [presented in this case] has been decided in other jurisdictions, from which we may derive guidance."], disapproved of on other grounds in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376–377 [36 Cal.Rptr.2d 581, 885 P.2d 994].) These cases generally fall into two categories: multiple searches of a defendant's vehicle and multiple searches of a defendant's residence.

---

[2] Our analysis has no application where the search is based on a warrant, rather than on consent. Like most jurisdictions, California has adopted a " 'one warrant, one search' " rule that prohibits law enforcement from conducting more than one search on the same warrant. (*People v. James* (1990) 219 Cal.App.3d 414, 418–420 [268 Cal.Rptr. 105] ["[M]ost jurisdictions have unfailingly adopted the rule that 'a warrant is executed when a search is conducted, and its legal validity expires upon execution. After execution, no additional search can be undertaken on the same warrant.' "].) Because search warrants may generally be executed at any time within a statutorily prescribed period (Pen. Code, § 1534 [search warrant must be executed "within 10 days after date of issuance"]), the rule is necessary to protect against the possibility that police might attempt to abuse the warrant by making numerous searches within that time period. (*James, supra,* 219 Cal.App.3d at pp. 418–419.) The rule has no application in the context of consensual searches. (See, e.g., *Ferguson, supra,* 213 S.E.2d at p. 859 [rule applies only to searches conducted under a warrant, which are done without authorization by the individual, and therefore must be "narrowly construed"; in contrast, consensual searches are limited only by the scope of consent].)

i. *Multiple searches of vehicles*

Courts in other jurisdictions have consistently approved of vehicular searches conducted under circumstances analogous to those presented here. In *Reid, supra*, 811 A.2d 530, the Pennsylvania Supreme Court considered whether it was reasonable for a police officer to search an impounded vehicle three days after the defendant had given his consent. The defendant in *Reid* was a suspect in the murder of his estranged wife. Police obtained the defendant's consent to search his truck and recovered various items that were not introduced at trial. After the search was completed, police arrested the defendant for violating a restraining order that barred him from contacting his wife and then impounded his truck. Three days later, an officer conducted a second search of the truck and found incriminating evidence that had been overlooked during the first search.

The defendant filed a motion to suppress the evidence found during the second search of his vehicle. The defendant argued that his initial consent "ended once he was taken into custody for violating the [restraining order]" and, as a result, the second "search of his truck . . . was outside the scope of his consent." (*Reid, supra*, 811 A.2d at p. 548.)

The Pennsylvania Supreme Court rejected the argument, concluding that the search fell within the boundaries of the defendant's consent: "Given that [defendant] did not at any point revoke his consent to allow the police to search his truck and that [the second search occurred] within a relatively short time span after [defendant] provided his consent, we conclude that [the] search was within the scope of [defendant's] consent." (*Reid, supra*, 811 A.2d at p. 549.)

In *People v. Nawrocki* (1967) 6 Mich.App. 46 [150 N.W.2d 516] (*Nawrocki*), a Michigan appellate court upheld multiple searches of a vehicle under a similar set of facts. The defendant in *Nawrocki* was arrested for an undisclosed charge. At the time of his arrest, the defendant gave an officer consent to search his vehicle " 'at any time.' " (*Id.*, 150 N.W.2d at p. 522.) After searching the vehicle, the officer took the defendant to jail and, with the defendant's permission, transported the vehicle to a police garage. Before the defendant was taken from the scene of his arrest, he locked the car. Later in the afternoon, the officer took the car keys from the defendant's personal effects, searched the vehicle again and found incriminating evidence.

The appellate court ruled that the second search fell within the scope of the defendant's consent. The court explained that the defendant had given permission to search his vehicle "at any time" and was aware that his vehicle was going to be transported to the police station. As one legal commentator

has explained, "[s]ignificant in *Nawrocki* is that the second search occurred promptly, that it occurred during the period of impoundment to which defendant had made specific reference, and that because of the impoundment the contents of the vehicle at the time of the search were the same as and thus no more incriminating than the contents at the time the consent was given." (4 LaFave, Search and Seizure (4th ed. 2004) § 8.1(c), p. 43.)

Finally, in *Trujillo, supra*, 576 P.2d 179, the Colorado Court of Appeals upheld a search conducted two days after a defendant gave his consent to search an impounded vehicle. The defendant in *Trujillo* was arrested in connection with a robbery. While in custody, the defendant gave officers consent to search his impounded vehicle. Immediately after obtaining the consent, officers searched the vehicle, but found no evidence connected to the robbery. Two days later, the police searched the vehicle again and found several items that had been stolen during the robbery.

The defendant moved to suppress the evidence, arguing that the officers' second search fell outside the boundaries of his consent. The appellate court upheld the search: "[d]efendant knew that the police had impounded his car when he consented to the search on August 9. Since that consent was not limited to a particular time, and since the defendant should have foreseen that the car would remain impounded for a reasonable length of time, we agree with the trial court that the later search was supported by the initial consent." (*Trujillo, supra*, 576 P.2d at p. 181.)

### ii. *Multiple searches of residences*

Courts have generally applied a greater level of scrutiny in cases where officers conducted multiple searches of a residence based on a single grant of consent. In *Douglas, supra*, 365 N.W.2d 580, the defendant called 9-1-1 to report that he had shot three of his family members. The defendant requested that the police enter the basement of the home, where the defendant was located. The police entered the basement, found the bodies and took the defendant into custody. Over the course of the next two days, crime lab technicians conducted an investigation of the premises, which ended on November 8, at approximately 8:00 p.m. Twenty-two hours later, on November 9, two officers returned to the defendant's home and found an incriminatory letter in the defendant's bedroom. The Wisconsin Supreme Court granted review to "determine whether the November 9th reentry of the defendant's home by police violated his constitutional rights." (*Id.* at p. 582.)

The court began its analysis by explaining that " '[p]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . .' [Citation.]" (*Douglas, supra*, 365 N.W.2d at p. 582.) The court

concluded that although the initial entry was "with . . . consent," the police could not "justifiably rely upon that consent to reenter the defendant's home . . . approximately forty-five hours later" (*ibid.*): "The defendant's consent . . . justified the search made at that time. But such authorization is not perpetual. The courts, including this one, have scrutinized with the greatest care claims by the state to the use of evidence seized in warrantless searches of one's home" (*id.* at p. 584). In a footnote, the court distinguished decisions from other jurisdictions that "did not involve a search of the defendant's home," including one case that permitted the repeated "search of an automobile." (*Id.* at fn. 7.)

The Supreme Court of Maine addressed analogous facts in *State of Maine v. Brochu* (Me. 1967) 237 A.2d 418 (*Brochu*). The defendant in *Brochu* permitted the police to search his home as part of an investigation into the cause of his wife's death. The "police went to the defendant's home and found nothing pointing to the cause of death." (*Id.* at p. 420.) However, later in the day, the police obtained evidence implicating the defendant in his wife's death and arrested him. The next morning, officers conducted a second search of the residence and recovered incriminating evidence.

The court ruled that although the first search was consensual, the defendant's "consent . . . had ended . . ." when officers placed him under arrest: "The officers [initially] entered the defendant's home . . . under the protection of his consent. By nightfall, however, the defendant had ceased to be the husband assisting in the solution of his wife's death and had become the man accused of his wife's murder . . . held under arrest for hearing. [¶] When the defendant became the accused, the protective cloak of the Constitution became more closely wrapped about him. . . . There is a particularly heavy burden on the State to show consent to a search and seizure without a warrant when the defendant is under arrest." (*Brochu, supra,* 237 A.2d at p. 421; see also *Sanchez, supra,* 982 S.W.2d 929 [second search unlawful where, after conducting consensual search, police arrested defendant, transported him to prison, and returned to residence to conduct a second search].)

However, in *Grega, supra,* 721 A.2d 445, the Vermont Supreme Court ruled that multiple searches of a residence occurring over several days fell within the scope of the defendant's consent. On September 13, the defendant gave the police written consent to search his home as part of an investigation into the murder of his wife. Later that day, the defendant left the state. The officers searched the residence on September 13, and then returned to conduct additional searches during the following two days. The defendant did "not contest that the initial search on September 13 was permissible," but argued that "the subsequent . . . searches on September 14 and 15 exceeded the scope of his consent." (*Id.* at p. 452.)

The court ruled that the police did not exceed the scope of consent by conducting searches "on two subsequent days": "Defendant left Vermont the same day he signed the consent form, without revoking his consent. He did not indicate, by word or action, that his consent expired at the end of that day, or was in some other way restricted. [Citations.] . . . [W]e note that the searches were close together in time, and part of a continuous criminal investigation into [the victim's] death. On these facts, the police entry and search of the condominium on three consecutive days was within the scope of defendant's consent." (*Grega, supra*, 721 A.2d at p. 453.) The court further noted that, unlike in *Brocha*, the "defendant was neither arrested nor charged at the time of the contested searches. [Citation.] The fact that he may have been under suspicion, standing alone, did not change defendant's status enough to undercut his consent." (*Ibid.*)

The Georgia Supreme Court reached a similar conclusion in *Ferguson, supra*, 213 S.E.2d 855. The defendant in *Ferguson* was arrested for murder and taken into custody. During an interrogation, the defendant "gave his consent to a search of his residence to prove his innocence. This search . . . took place between 11:00 and 11:30 a.m. on the day of the arrest." (*Id.* at p. 858.) Although no evidence was found, police conducted "another search . . . later that same day between 3:00 and 3:30 p.m.," and found the homicide victim's gun and billfold. (*Ibid.*) The defendant argued "that the investigating officers did not have his consent to make the second search, which yielded the incriminating evidence." (*Ibid.*)

The court ruled that the subsequent search was lawful: "An investigation for evidence regarding the homicide was the sole and continuing purpose of the search here and was well within the contemplation of the consent by appellant when given. There is no reason to assume that this consent did not apply to the second search as it was conducted within a brief and reasonable time later for the same purpose, and there is no evidence that appellant ever withdrew or limited the original consent to search which he gave the officers. We find no illegal search and seizure took place under these circumstances." (*Ferguson, supra*, 213 S.E.2d at p. 858; see also *Scaggs v. State of Texas* (Tex.App. 2000) 18 S.W.3d 277, 287–289 [multiple searches of residence lawful where defendant had not limited or withdrawn his consent, the police remained "in control of the house" for the entire period and defendant was not arrested until after all searches were complete].)

### iii. Summary of factors courts have used to assess the reasonableness of conducting multiple searches

■ The cases above demonstrate that courts have considered a variety of factors in assessing the reasonableness of conducting more than one search

based on a single grant of consent. Those factors have included (1) whether the defendant placed any limitations on the scope of the initial consent; (2) the amount of time that passed between the grant of consent and the contested search; (3) whether police remained in control of the area being searched prior to conducting the second search; (4) whether officers were searching a residence or other area that is entitled to a heightened expectation of privacy; (5) whether the suspect was arrested between the initial search and the subsequent search; (6) whether the searches were part of a continuous criminal investigation having a single objective; and (7) whether the defendant had advance knowledge of, and an opportunity to object to, a subsequent search.

This list is not exhaustive; because the reasonableness of a search must be based on the totality of circumstances, any number of other factors might be relevant depending on the individual facts of the case under review. Moreover, the presence or absence of any one factor should not be treated as dispositive. Like other multifactor reasonableness tests, the list must be tailored to the unique circumstances of each case. (Cf. *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128 [85 Cal.Rptr.3d 20] ["well-recognized" list of factors used to assess reasonableness of class action settlement " 'is not exhaustive and should be tailored to each case' "].)

■ When applying the factors above, courts should also remain cognizant that, as a general matter, a consent to search usually involves an "understanding that the search will be conducted forthwith and that only a single search will be made." (*Logsdon, supra,* 567 N.E.2d at p. 748; see also 79 C.J.S., *supra,* Searches, § 167, p. 210 ["[o]ne consensual entry does not . . . ordinarily entitle an officer to return at a substantially later time"].) Our conclusion that a single grant of consent may support multiple searches under some circumstances should not be construed as giving police broad authority to regularly engage in such conduct.[3] Rather, the factors listed above are intended to help courts identify those limited instances in which it might be reasonable to conduct more than one search.

b. *Officer Hofmeyer's search fell within the scope of Valencia's consent*

■ In this case, the evidence at the hearing on Valencia's motion to suppress showed that Officer Banuelos asked Valencia if he could search the vehicle and Valencia "gave [his] consent to do so." Officer Banuelos conducted a brief search of the vehicle, but found nothing incriminating. After

---

[3] For example, it is clear that if "a defendant were to consent to a search of his nearby car, this could hardly be viewed as authorizing the police to wait and search that car some weeks later if they were then to see it parked on the street." (4 LaFave, Search and Seizure, *supra,* § 8.1(c), p. 42.)

Officer Costa discovered that Valencia might have outstanding arrest warrants, Officer Banuelos transported Valencia to the police station to investigate the matter further. Officer Costa elected to drive Valencia's vehicle to the station so that Valencia would have access to his truck in the event the officers determined the warrants "were not his."[4] When Officer Banuelos arrived at the station, he informed Officer Hofmeyer that Valencia had given his consent to search the truck. Officer Hofmeyer immediately conducted a second search of the vehicle. We conclude that, under these circumstances, Officer Hofmeyer's subsequent search of the vehicle did not exceed the scope of Valencia's consent.

Our decision is based on several factors. First, the evidence presented at the preliminary hearing demonstrates that the second search did not cause any appreciable diminution in Valencia's expectation of privacy with respect to his vehicle. By consenting to Officer Banuelos's search, Valencia waived any expectation of privacy he had to the interior of his truck. (See *U.S. v. Rubio* (9th Cir. 1983) 727 F.2d 786, 797 (*Rubio*) ["Once consent has been obtained from one with authority to give it, any expectation of privacy has been lost."]; *People v. Gomez* (2005) 130 Cal.App.4th 1008 [30 Cal.Rptr.3d 662] [defendant had no reasonable expectation of privacy to residence where he had consented to the search as a condition of probation].) It is undisputed that, after obtaining consent, the officers maintained continuous control over the vehicle at all times prior to Officer Hofmeyer's search. The contents of the vehicle at the time of the second search could have been no different than the contents at the time Valencia gave his consent. As a result, the second search did not result in any further diminution of Valencia's expectation of privacy. (4 LaFave, Search and Seizure, *supra*, § 8.1(c), p. 43 [where police maintained control of vehicle following consent, second search proper because the contents were "no more incriminating than the contents at the time the consent was given"]; cf. *Rubio, supra*, 727 F.2d at p. 797 [once a defendant gives an officer consent to search, it is "seriously doubt[ful]" that the entry of additional officers "further diminish[es] the consenter's expectation of privacy"].)

■ Second, we find it significant that this case involved the search of a vehicle, rather than a residence. (See *People v. Magee* (2011) 194 Cal.App.4th 178, 183 [123 Cal.Rptr.3d 689] ["Although ' "[t]he Fourth Amendment protects people, not places[,]". . . the extent to which the Fourth Amendment

---

[4] Valencia has not argued that Officer Costa's decision to transport the vehicle to the police station constituted an unlawful seizure. As a result, we need not consider whether the second search was rendered unlawful because it was facilitated by an intervening, illegal act. (See *U.S. v. Ibarra* (10th Cir. 1992) 955 F.2d 1405 [trial court properly granted motion to suppress where second search was conducted after police unlawfully impounded defendant's vehicle]; *People v. Torres* (2010) 188 Cal.App.4th 775, 786 [116 Cal.Rptr.3d 48] [" '[a]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable' "].)

protects people may depend upon where those people are.' [Citation.]"].) Courts have "traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 367 [49 L.Ed.2d 1000, 96 S.Ct. 3092] (*Opperman*).) The reason for this distinction "lies in the diminished expectation of privacy which surrounds the automobile: [¶] 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.' [Citation.]" (*United States v. Chadwick* (1977) 433 U.S. 1, 12 [53 L.Ed.2d 538, 97 S.Ct. 2476], overruled on other grounds in *California v. Acevedo* (1991) 500 U.S. 565 [114 L.Ed.2d 619, 111 S.Ct. 1982]; see also *In re Arturo D.* (2002) 27 Cal.4th 60, 68 [115 Cal.Rptr.2d 581, 38 P.3d 433] ["individuals generally have a reduced expectation of privacy while driving a vehicle on public thoroughfares"].) Indeed, the United States Supreme Court has described the expectation of privacy with respect to one's automobile as "significantly less than that relating to one's home or office." (*Opperman, supra*, 428 U.S. at p. 367.)

Third, there is no evidence indicating that Valencia was detained or arrested between the time he gave his consent and the time Officer Hofmeyer conducted his search. An intervening detention or arrest may, at least in some circumstances, effectively terminate a grant of consent. (See *Brochu, supra*, 237 A.2d at p. 421 [second search outside scope of consent where defendant arrested for murder after the first search was completed].) Here, however, Officer Banuelos testified only that, after completing the first search, he "transported" Valencia to the police station to clarify whether certain outstanding arrest warrants pertained to him. It is therefore unclear whether Valencia voluntarily accompanied Officer Banuelos to the station or was forced to do so through a formal detention. (*Ford v. Superior Court* (2001) 91 Cal.App.4th 112, 125 [109 Cal.Rptr.2d 790] ["The Fourth Amendment does not prevent a person from agreeing to accompany officers to the police station and remain there for interrogation."].) Because defendant has never alleged that he was subject to a detention or arrest after the initial search was completed, we cannot conclude that his status changed in a manner that might have otherwise "undercut his consent." (*Grega, supra*, 721 A.2d at p. 453 ["[D]efendant was neither arrested nor charged at the time of the contested searches. [Citation.] The fact that he may have been under suspicion, standing alone, did not change defendant's status enough to undercut his consent."].)

Fourth, the record indicates that Officer Hofmeyer's search occurred shortly after Valencia's grant of consent. Officer Banuelos testified that he stopped Valencia and obtained his consent to search the vehicle at approximately 5:15 p.m. Officer Hofmeyer, in turn, testified that he conducted the second search of the vehicle around 5:15 p.m. or "shortly thereafter." Based

on this undisputed evidence, it appears that the second search occurred in close temporal proximity to the initial consent.

Fifth, as the trial court explained, the evidence showed that Valencia gave a general grant of consent that was not limited to a particular time or place. Although a general grant of consent does not, standing alone, normally justify multiple searches (*Logsdon, supra*, 567 N.E.2d at p. 749 ["consent to search which is unlimited as to time and number of searches must be judged under a rule of reason"]), it is nonetheless relevant that Valencia did not do or say anything that specifically alerted the officers that his consent was limited to an immediate search at the site of the traffic stop.

Ordinarily, we would also consider whether the defendant was aware that law enforcement had impounded the vehicle after the first search, creating an opportunity to withdraw or limit the scope of the consent before the second search was conducted. (Cf. *Nawrocki, supra*, 150 N.W.2d at p. 519 [upholding second search committed after impound where evidence showed the defendant knew the police were going to seize his car]; *Trujillo, supra*, 576 P.2d at p. 181 [upholding second search where defendant "knew that the police had impounded his car when he consented to the search"].) In this case, however, the record is silent on that issue. At the hearing, Officer Banuelos testified only that Officer Costa drove Valencia's vehicle to the station so that defendant would have access to his truck in the event the warrants were not his. Officer Banuelos did not indicate whether Valencia knew his vehicle had been brought to the station or had any other information that might have alerted him to the possibility of a second search. Although a defendant's knowledge of impound and failure to limit or withdraw the previous consent to search would normally be a factor weighing in favor of the reasonableness of a subsequent search, the limited record here precludes that consideration.

Under the totality of the circumstances presented in this case, we hold that it was objectively reasonable for Officer Hofmeyer to conclude that his search fell within the scope of Valencia's consent.[5]

---

[5] The primary argument set forth in Valencia's appellate briefs is that Officer Hofmeyer's search was not objectively reasonable because, at the time of consent, Valencia could not have foreseen that his vehicle was going to be transported to the police station. As we have discussed, the record shows that, after obtaining a general grant of consent, officers conducted two searches of defendant's vehicle within a close timeframe, while maintaining continuous control over the area that was searched. We do not believe that, under these circumstances, the officers' act of moving the truck to a new location rendered the second search unreasonable.

## DISPOSITION

The trial court's judgment is affirmed.

Woods, Acting P. J., and Jackson, J., concurred.